[Civil No. 1572. Filed March 30, 1918.]

[170 Pac. 280.]

OLIVER J. CROOK, Appellant, v. PANSY CROOK, Appellee.

1. PROCESS — SUBSTITUTING SERVICE — AMENDMENT OF RETURN.—Under Civil Code of 1913, paragraph 448, requiring upon publication of summons that a copy be mailed to defendant forthwith, an affidavit showing mailing one month subsequent is insufficient, but it is the fact of service and not the return that confers jurisdiction, and error in the return may be corrected under paragraph 455, under direction of court.

2. DIVORCE—JURISDICTION—PENDENCY OF OTHER SUIT—ABATEMENT.— The pendency of another suit for divorce between the parties in another county of the state does not affect the jurisdiction of the latter court, although if properly presented it would abate the suit.

3. APPEAL AND ERROR—SUSTAINING JUDGMENT WHEN RIGHT ALTHOUGH REASONING WRONG.—If the judgment of the lower court is right for any reason, although the one given may be wrong, it must be sustained, and the theory of the lower court need not be determined.

4. JUDGMENT — SETTING ASIDE DEFAULT DECREES — CONSTRUCTIVE SERVICE.—Under Civil Code of 1913, paragraph 600, the trial court, within 6 months, and under paragraphs 592–595 within one year, after rendition of default judgment based on service by publication, may, for good cause shown, set aside the judgment, and facts showing fraud and bad faith on part of plaintiff who brought second suit in another county to avoid contesting one still pending, show good cause.

5. DIVORCE—DEFAULT DECREE—VACATING—EFFECT.—Plaintiff in divorce is presumed to know that a default decree upon service by publication may be set aside within one year, and he cannot complain that a vacation of the decree will work a great wrong to a second wife and a child born to them.

[As to proceedings for, and effect of, vacating and annulling divorce, see note in 61 Am. Dec. 459.]

APPEAL from a judgment of the Superior Court of the county of Pima. W. A. O'Connor, Judge. Affirmed.

Mr. Ben C. Hill, Mr. R. W. Sprague and Mr. Frank E. Curley, for Appellant.

Miss Alice M. Birdsall and Mr. W. Fred Kain (Messrs. Owens & Wingert, of Counsel), for Appellee.

ROSS, J.—The plaintiff prosecutes an appeal from an order denying a motion to amend the return of service of summons and from an order granting a motion to set aside default and to vacate the judgment.

On the trial of the motion to vacate the judgment, it was the theory of defendant that the court never acquired jurisdiction because of the insufficiency of the proof of service of summons. The service was constructive, and consisted of a publication of the summons and the mailing of a copy thereof and of the complaint to the address of the defendant at her residence in Whittier, California. The defect in the affidavit of service was that it stated affiant mailed it on March 25, 1916, whereas the suit was instituted and summons issued on February 25, 1916. The statute (paragraph 448, Civil Code) requires the copies to be mailed forthwith if defendant's post-office address is known to plaintiff, and this was not complied with if the date of mailing fixed in the affidavit was correct. Plaintiff contends that a clerical mistake was made in drafting the affidavit, by inserting March 25th instead of February 25th, and, by motion supported by affidavit, asked permission of the court to correct the mistake. The refusal of the court to permit the amendment is assigned as error.

Clerical mistakes of the kind claimed not infrequently occur by inadvertence or carelessness. The return of service was sworn to March 29th, and readily it will be seen that in drafting the affidavit the current month might not unnaturally displace any month *ante* or *post*. Besides, the affidavit was made by an attorney who would know that the mailing of process on March 25th would not be a compliance with the law requiring that it be done forthwith.

The showing in resistance to the motion to amend was that the copies of summons and complaint were not received by defendant. This might be, and still it would not be proof, or but slight proof, that they were not mailed. The testimony of failure to receive is negative in its nature, and ought not to prevail over the positive sworn statement of posting. The one is not inconsistent with the other. Both could be true. The packet might have been lost or destroyed.

Amendments such as requested are authorized to be made under the direction of the court. Paragraph 455, Civil Code. It is not an absolute right to be exercised without leave of the court. If the claimed mistake or informality in the return,

XIX Ariz.—29

either on the face of the return or from extrinsic evidence, is shown to be erroneous, the duty of the court to permit correction is plainly imperative. As a matter of practice, we believe the permission to amend is usually granted. It is the fact of service and not the return of service that confers jurisdiction. *Ranch* v. *Werley* (C. C.), 152 Fed. 509–515; *Herman* v. *Santee,* 103 Cal. 519, 42 Am. St. Rep. 145, 37 Pac. 509. We think, under the circumstances, the court should have granted the right to amend the affidavit of service, *nunc pro tunc,* as of the date of the judgment, and in the further consideration of the case we shall regard the correction as having been made.

The action, which is one for divorce, was instituted February 25, 1916, in the superior court of Pima county, alleging desertion. Service upon defendant was had by publication and by mailing a copy of summons and complaint to defendant at her residence, Whittier, California. In due course, defendant's default was entered, and on May 16, 1916, plaintiff submitted evidence in support of his allegation, whereupon judgment dissolving the marriage relation between plaintiff and defendant was entered.

Thereafter, on November 13, 1916, defendant filed her motion asking that default be set aside and judgment vacated on two grounds: First, because she was not served with process and had no notice or knowledge of the institution or pendency of the action in Pima county; and, second, because the judgment was obtained by fraud, in that at the time of the institution of the action in Pima county and at the time of the entry of judgment a suit was pending in the superior court of Maricopa county between the same parties, wherein plaintiff was seeking a divorce from defendant, and that this latter suit was still pending and undisposed of, which fact was known to the plaintiff and his attorney. In support of the motion, defendant filed affidavits of herself and John Crook, her father, and the mail carrier at Whittier, showing that no copy of the summons and complaint was ever received by defendant, although her residence was well known to plaintiff. Appended to the motion, and as a part thereof, were also copies of the files in the divorce suit which was commenced June 2, 1915, by plaintiff against the defendant, alleging desertion and cruelty, in Maricopa county, as follows: Complaint and amended complaint; answer denying desertion and

cruelty and praying for dismissal of action at plaintiff's costs, for suit money and for attorneys' fees; motion for an order of the court requiring plaintiff to pay defendant as attorneys' fees the sum of $300 in making her defense.

About this time, or soon thereafter, the attorney, a resident of Phoenix, who brought the action in Maricopa county, withdrew from the case and plaintiff's substituted attorney living at Tucson, Pima county, took full charge. He wrote letters to the clerk of the superior court of Maricopa county and to the attorney for the defendant requesting that the hearing on the motion for attorneys' fees be continued to be taken up on a trial of the case on its merits, and was granted two such continuances. Being advised that the motion for attorneys' fees was set for hearing October 16, 1915, he wrote to the clerk on October 15, as follows: ''Please enter my appearance as attorney for O. J. Crook, the plaintiff herein, and dismiss plaintiff's complaint without prejudice.'' This request to dismiss was received by the clerk on October 16th and was filed, but was not granted, of which the clerk advised plaintiff's attorney, stating that the court would not dismiss until the motion for suit money was withdrawn or otherwise disposed of. On the same day the court entered an order requiring plaintiff to pay defendant $300 as attorneys' fees, together with the sum of $5, costs of suit.

The attorney for the plaintiff and the attorney for the defendant kept up an intermittent correspondence about the judgment for $300 attorneys' fees, until January 20, 1916; the status of the case on the Maricopa docket being unchanged at that time or since by any action or order of the court. It is admitted, however, that the plaintiff paid the defendant the $300 assessed against him as attorneys' fees, and we assume, although it is not so shown, that it was paid prior to February 25, 1916, the date of filing suit in Pima county. Defendant contends that the facts above detailed establish fraud upon the part of the plaintiff, not only as against the court but also against the defendant, and insists that the motion to vacate should be sustained upon that ground.

The judgment sought to be vacated was obtained by substituted service. The defendant had no actual notice or knowledge of the institution or pendency of the action, and if this was not the result of a studied effort on the part of plaintiff, it is at least manifest that he did not invite a repetition of the preliminary skirmishes he had encountered in the Mari-

copa suit, nor court a trial of the issues with the defendant present vigorously denying every charge he had made against her and insisting that he, and not she, was the culprit. True, he claims as the reason for the change of bases of operation from the Maricopa court to the Pima court a doubt existed or had arisen as to whether at the time the first suit was brought he had lived the full six months in Maricopa county necessary under the law. From the record, it is apparent that this was a doubt of convenience and expediency, and not real. It had not been made an issue by the pleadings. The issues were the grounds he had alleged in his complaint for divorce from defendant, and we are persuaded it was the trial of these contested issues that he sought to avoid.

It is the contention of the defendant that the Maricopa county suit was all the time and is now pending, notwithstanding the written request of plaintiff of October 15, 1916, that it be dismissed, whereas the plaintiff insists that inasmuch as no cross-bill or counterclaim had been filed, under paragraph 463 of the Civil Code, he had the absolute and unconditional right to discontinue the suit in that manner, and that the filing of his request without any affirmative action by the clerk or the court, *ipso facto,* had that effect. Without determining that very interesting question, or intimating any opinion thereon, we may pause to say it is immaterial which contention is right. The pendency of the suit in Maricopa county did not affect the jurisdiction of the superior court of Pima county, although it would, if properly presented to the latter court, have abated the suit therein. Paragraphs 468, 469, Civil Code. The evil was in abandoning a jurisdiction that he had invoked while the court was insisting upon holding the case, and going into the court of a neighboring county with the same grievances. If the accident of residence dictated or required this change, the plaintiff should have, in good faith and in a regular manner, so informed the Maricopa court and the defendant, and left that court with a clean bill of health, instead of adopting the very doubtful, if not duplicitous, course he did by ignoring the contention of the Maricopa court and taking his troubles to another court uninformed and unadvised of past proceedings and there, unembarrassed by the impedimenta of the defendant, obtain what, if the facts had been known, would never have been granted. Courts of justice may be, and often are, wrong in the assumption and

discharge of their functions, but it would be intolerable to think relief therefrom could be had in the manner pursued in this case.

The trial court assigns as his reason for vacating the judgment lack of jurisdiction, and we assume, although he does not so state, it was based on the insufficiency of the return of process. If his judgment was right for any reason, the one he gave or any other, it should be sustained. The defendant insists the order vacating the judgment is fully justified upon the charge and proof of fraud. As we view it, it is not necessary that either of the reasons suggested should be relied upon in arriving at the conclusion that the order vacating the judgment was right. .

The statute (paragraph 600, Civil Code) provides that:

"The court may, [at] any time within six months after the making or entry of any judgment, order or other proceeding . . . for good cause shown, modify or set aside its judgments, orders or proceedings." .

We think "good cause" is abundantly shown, and, as the motion to vacate was filed within six months from the date of the entry of judgment, the motion was properly granted upon that ground.

The judgment having been entered upon constructive service, without appearance by defendant, either in person or by attorney, was subject to be set aside and vacated "for good cause shown" at any time within one year from its rendition under the procedure found in paragraphs 592–595 of the Civil Code, and, while the application in this case is not in accordance with that procedure, it is well within the legislative policy there declared. We take it that a motion in the original action, as was made in this case, is the correct procedure under paragraph 600, *supra*.

It would seem that where the defaulting defendant in a divorce case is without actual knowledge of the pendency of the suit, on the grounds of public policy, liberal opportunity should be extended her to be heard in refutation of any charges preferred by the plaintiff, for the reason that the state is vitally interested in seeing that contracts of marriage are not dissolved for trivial or no cause. These contracts are solemnized under the law by officers of the state or by the clergy. They may not be rescinded or canceled by the parties as other contracts between private parties. Marriage is an institution

regulated by law. The public is interested in it, and has established a supervisorial power over its beginning, continuance, and dissolution. The law forbids collusive divorce, and, while it permits *ex parte* divorce, it gives a wide latitude to the defaulting spouse, especially where service is constructive, to have her day in court, and this on the broad principle that the domestic relation is of public concern.

"It has been said by the courts and eminent writers on the subject that such an action (divorce) is really a triangular proceeding, to which the husband and wife and the state are parties." 9 R. C. L. 253, § 12, and cases there cited.

Plaintiff urges, rather pathetically, as a reason against vacating the judgment the great wrong that will be done the woman whom he married immediately after his divorce was granted, and the blight upon the life of a child, the issue of such marriage. However regrettable the situation, it is of his begetting and not the fault of the law. A more circumspect and conscientious observance of the law would have prevented all the grief of which he speaks so feelingly at this time. He should have made haste slowly. There is a proverb, "Haste often brings shame," and it is particularly applicable to hurried marriage of divorcees.

The same consideration was urged on the court in *Lockwood v. Lockwood, ante,* p. 215, 168 Pac. 501, to which we said:

"The appellant has through ignorance of the law, brought about an injury for which he alone is responsible. He is charged with knowing that the laws of Arizona give to the appellee the clear right to cause the divorce decree to be vacated, and to be heard in her defense, and that right exists one year after the rendition of such decree. Knowing this to be the law, he took his chance and lost."

The judgment is affirmed, and the cause remanded for further proceedings in accordance with law.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.