[Civil No. 3759.   Filed December 14, 1936.]

[62 Pac. (2d) 1321.]

CLINTON C. BLAIR, Appellant, v. PANSY WILMA BLAIR, Appellee.

Mr. W. E. Ferguson and Mr. John L. Sweeney, for Appellant.

Mr. Guy Axline, for Appellee.

LOCKWOOD, C. J.—This is an appeal from an order of the Superior Court of Navajo County, setting aside a certain judgment of said court. The facts necessary for determination of the case may be stated as follows: Clinton C. Blair, hereinafter called plaintiff, brought suit against Pansy Wilma Blair, his wife, hereinafter called defendant, for divorce. The complaint set up the usual formal matters, and alleged that there were three children the issue of the marriage, aged respectively seven, twelve, and fourteen years, but that they were at that time with defendant in Atchison, Kansas. It then continued as follows:

"That the plaintiff and defendant are not the owners of any community property; that plaintiff is willing that the defendant may have the custody of said children during her good behavior and is willing to pay defendant Fifty Dollars per month for the support of herself and said children as long as able to do so."

The ground upon which the divorce was sought was habitual intoxication and extreme cruelty, which was set forth in some detail in the complaint. Service was made on the defendant by registered mail, in Atchison, Kansas, on May 20, 1935. In the letter which accompanied the copy of the summons and the complaint, as aforesaid, was a request by counsel for plaintiff that the defendant accept service as though made in Arizona and waive a time for answering the complaint. This, however, she declined to do, and her attorney in Atchison wrote to counsel for plaintiff as follows:

"I note from your petition that the plaintiff is willing to pay $50.00 per month for the support of the defendant and her children as long as he is able to do so. Mrs. Blair informs me her husband is Chief of Police at Winslow and is making approximately $200.00 per month; that one of her children has leakage of the heart; that one child is in high school and one in the seventh grade and that she cannot raise her children on $50.00 per month. If Mr. Blair is willing to pay $75 per month for the support of these children and $25 attorney fee, then Mrs. Blair will sign a stipulation to the effect that in case divorce is granted to Mr. Blair that there be paid to her for the support of her children $75 per month and that there be further paid $25 to me as attorney for Mrs. Blair."

Counsel for plaintiff answered this letter somewhat in detail, stating, among other things:

"However, you can assure Mrs. Blair that her husband wishes to be just as fair as he can but doesn't feel that a Court Order should be entered for more than $50.00 per month and he believes in her location, in case of a pinch, she should be able to get along on that amount because the children are all old enough that in case of a pinch she should be able to help some herself.

"I believe that she can rely on his doing his best in the way of finances *not* in excess of the $50.00, which we will request the Court to enter in the decree for

her. And as long as she conducts herself properly she may retain the custody of the children, or Mr. Blair is willing to take them and maintain them to the best of his ability, in which event, application could be made to the court to modify the decree as to alimony.''

Relying upon the allegations of the complaint above quoted and this correspondence, defendant made no appearance and entered no answer in the case. Default was entered on the 5th day of August, and on the 12th a decree of divorce was rendered in the following language:

''It is therefore hereby ordered, adjudged and decreed that the bonds of matrimony heretofore and now existing between the plaintiff and defendant be forever dissolved and held for naught; that the plaintiff and defendant each be restored to the status of single persons.''

No provisions whatever were made in the decree in regard to alimony or the custody of the children. Shortly thereafter, defendant learned of the decree, and filed a motion to set aside the judgment. There were several grounds contained therein, but the one on which the court based its order was that her failure to answer was the result of inadvertence and excusable neglect. In its decision, the trial court said, in substance, that defendant had understood and had the right to understand if she did not answer, the decree of divorce would contain a provision allowing her $50 a month and the custody of the minor children during good behavior, and the fact that judgment was not entered in accordance with this understanding justified the setting aside of the decree.

There are six assignments of error, but in view of the reason given by the trial court for its action, we think we need consider only the question of whether her failure to answer was caused by excusable neglect. Section 3859, Revised Code of 1928, reads as follows:

"When judgment may be vacated or modified. The court may, any time within six months after the making or entry of any judgment, order or other proceeding, relieve a party from any such judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; or may, for good cause shown, modify or set aside its judgments, orders or proceedings."

We have held that this section applies to judgments in divorce actions. *Crook* v. *Crook,* 19 Ariz. 448, 170 Pac. 280. It would certainly seem that when a defendant is given to understand by plaintiff that a decree containing certain specific provisions, which appear in the complaint, will be asked for and entered if she does not appear and contest the action, that it would be wholly unjust for plaintiff, after defendant has acquiesced in his suggestion on these grounds, to proceed to obtain a judgment which did not contain the provisions agreed upon, especially when so important and delicate a matter as the custody of children and support for them is involved. Indeed, the only even plausible argument which plaintiff attempts to make against this suggestion is (a) that the motion to set aside the judgment was not made within the statutory time, and (b) that the court was without jurisdiction to enter a judgment of the kind which plaintiff had promised defendant would be entered, for the reason that she was outside the jurisdiction of the court. Considering (a), we think plaintiff is basing his argument on the theory that a motion to set aside a judgment is, in effect, a motion for a new trial which, under the statute, must be made within ten days and determined within twenty days. Section 3850, Rev. Code 1928. We have held that section 3850, *supra,* and section 3859, *supra,* apply to different situations. *Smith* v. *City of Nogales,* 24 Ariz. 557, 211 Pac. 592; *Bryan* v. *Inspiration Cons. Copper Co.,* 27 Ariz. 188, 231 Pac. 1091. We think that section 3859, *supra,* rather than

section 3850, *supra,* is the one applicable to circumstances such as appear in the record of this case. Of course the motion and the judgment were made and entered in ample time under the provisions of section 3859.

■■ We next consider the more serious objection in regard to the jurisdiction of the court. We are inclined to think the conduct of plaintiff, as appearing in the record, would have justified the court in setting aside the judgment actually rendered, even though it did not have jurisdiction to render the judgment agreed upon until defendant had entered her appearance, but assuming, for the sake of argument only, that if the jurisdiction did not exist, the court was in error in holding that defendant had shown excusable neglect, let us examine the jurisdictional question. Ever since the famous case of *Pennoyer* v. *Neff,* 95 U. S. 714, 723, 24 L. Ed. 565, it has been accepted as axiomatic that a judgment which acts *in personam* may not be rendered against a defendant unless such defendant has either been served personally with process within the territorial jurisdiction of the court, or has voluntarily entered an appearance in such court. The reason, of course, is obvious. It is an elementary principle that the laws of a state have no operation outside its own territory except so far as may be allowed by comity, and therefore that no tribunal established by it can extend its processes beyond that territory so as to subject either persons or property to its decisions. Story's Conflict of Laws, § 539; *Pennoyer* v. *Neff, supra.* But in that same case the court said:

"But as contracts made in one State may be enforceable only in another State, and property may be held by nonresidents, the exercise of the jurisdiction which every State is admitted to possess over persons and property within its own territory will often affect

persons and property without it. To any influence exerted in this way by a State affecting persons resident or property situated elsewhere, no objection can be justly taken; whilst any direct exertion of authority upon them, in an attempt to give ex-territorial operation to its laws, or to enforce an ex-territorial jurisdiction by its tribunals, would be deemed an encroachment upon the independence of the State in which the persons are domiciled or the property is situated, and be resisted as usurpation.

"Thus the State, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with; and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the State within which it is situated."

■■ Now it is very generally held that where a party invokes the jurisdiction of a court in a matter within the scope of its general jurisdiction, he may not thereafter question the jurisdiction. *Wayne* v. *Alspach,* 20 Idaho 144, 116 Pac. 1033; *Sentenis* v. *Ladew,* 140 N. Y. 463, 35 N. E. 650, 37 Am. St. Rep. 569; *Glass* v. *Smith,* 66 Tex. 548, 2 S. W. 195; *Phillips* v. *W. T. Adams Mach. Co.,* 52 La. Ann. 442, 27 So. 65. We think, therefore, that plaintiff having voluntarily invoked the jurisdiction of the Superior Court of Navajo County, and in his complaint having stated his willingness to be bound by a decree awarding custody of the children and support money to defendant, is estopped from asserting that the court had not jurisdiction to render such a decree. 15 C. J. 846; *Parker* v. *Uchida,* 14 Ariz. 57, 125 Pac. 715.

■ It would be a very different situation if the decree which was asked for bound *defendant* to do or not to do any particular things, but it did not. So far as she was concerned, she was at liberty to do as

she pleased. It was the plaintiff only who would have been bound. We hold, therefore, that the Superior Court of Navajo County had jurisdiction to render a judgment in a divorce action compelling plaintiff, who had invoked its jurisdiction, to pay support money for the children of the parties and depriving him of their custody.

The granting of a motion setting aside a judgment, like that of one granting a new trial, is very much in the discretion of the trial court, and we are certainly of the opinion that, under the facts shown by the record, that discretion was not abused. Plaintiff urges that defendant should not be permitted to defend against the action on its merits, for the reason that her affidavit in support of the motion to set aside the judgment showed no meritorious defense, but merely a general denial. We are of the opinion that when the plaintiff made specific charges of misconduct against defendant which would justify a divorce, about the only way she could answer such charges was by a general and specific denial of each and every one of them, but, not content with this, she further offered the affirmative allegation that she had in all respects conducted herself as a wife should.

The order appealed from is affirmed.

McALISTER and ROSS, JJ., concur.