Blenko, Appellant, v. Schmeltz et al.

366

Argued May 24, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles E. Kenworthey,* with him *John J. Heard, Elder W. Marshall* and *Reed, Smith, Shaw & McClay,* for appellant.

*W. Denning Stewart,* with him *Rose, Eichenauer, Stewart & Rose,* for appellees.

OPINION BY MR. JUSTICE LINN, June 24, 1949:

Plaintiff appeals from the refusal to continue in force a preliminary injunction which had been granted on affidavits pursuant to Equity Rule 38. Unless clear abuse of discretion is shown such orders are affirmed: *Trainer v. International Alliance*, 353 Pa. 487, 491, 46 A. 2d 463 (1946). In this case the error is plain. For that reason we granted plaintiff's petition for a writ of supersedeas. The facts on the merits, as they may be developed on final hearing, are not before us; we may therefore not at this time enter a final decree such as appellant suggests is authorized by the Act of May 20, 1891, P. L. 101, section 2, 12 PS 1164.

The plaintiff is a member of the bar of this Court and also is a member of a voluntary association of patent agents and patent lawyers known as the Patent Law Association of Pittsburgh. He filed this bill February 17, 1949, in the court of common pleas of Allegheny County. The defendants are seven individuals who constitute the board of managers of the Patent Law Association of Pittsburgh. Plaintiff sues to restrain the defendants from instituting or conducting proceedings to expel him from the association on the ground of unprofessional conduct. He alleged that the defendants' proceeding, if not restrained, would cause irreparable harm to his professional, social and civic reputation, and that the defendants could not and would not accord him a fair and impartial hearing because they had prejudged his conduct and bore personal animosities, jealousies and prejudices against him. In the opinion filed by the court below, Judge MONTGOMERY said, "At the conclusion of the testimony relating to jurisdiction and before proceeding on the merits of the charges preferred against plaintiff, a motion to refuse the preliminary injunction for lack of jurisdiction was sustained, because: (1) Plaintiff failed to establish that any property right was involved; and (2) He failed to establish that he had

exhausted or been deprived of his remedies provided by the By-laws of the Association." We differ from the learned chancellor on both grounds.

The objects of the association, as averred in paragraph 5 of the bill are: " 'to promote social intercourse among its members, and the exchange of views upon subjects of professional interest; and to consider and take appropriate concerted action concerning matters which may arise affecting Patent, Trade-Mark and Copyright Laws and the administration thereof.' The membership consists of virtually all persons in Pittsburgh who are qualified to practice Patent Law and who are registered as Patent Agents before the United States Patent Office. The Board of Managers of the Association, under its by-laws, 'have general charge of the affairs, funds and property of the Association.' "

Paragraphs 6, 7 and 8 of the bill are as follows: "6. Membership in the Association is a valuable property right, and plaintiff's membership therein is of substantial value to him."

"7. Article III, Section 6, of the Articles of Association of The Patent Law Association of Pittsburgh provides: 'Section 6. Any member of this Association who, after a full hearing by the Board of Managers, shall be found by the affirmative vote of five (5) members of said Board to have conducted his profession in an unethical or unprofessional manner, shall be expelled from this Association.' "

"8. Without any notice that any complaint had been lodged against him or that any aspect of his professional standing or conduct was under consideration by the defendants or any other body and without any opportunity to appear before the Board, or any representative thereof, on January 18, 1949, plaintiff received, by registered mail, a letter on the letterhead of the Association, dated January 17, 1949, and signed by defendant Schmeltz as President. This letter stated that at a

meeting of the full Board of Managers of The Patent Law Association of Pittsburgh on January 13, 1949, 'full consideration was given to the facts leading up to, and the conclusions stated in the opinion of the Commissioner in the Peik Interferences Nos. 74841 and 75177, which was handed down on July 19, 1948,' and that 'as a result of this consideration' the Board had adopted a resolution 'to the effect that you immediately resign from our Association and that you also resign as a member of the Bar of all Courts before which you are eligible to practice, and that you submit to this Board evidence of compliance therewith within twenty days of the receipt of this letter.' The letter then threatened that upon failure to comply with these 'demands' the Board would institute disciplinary proceedings against plaintiff. A complete copy of this letter is attached hereto, made a part hereof and marked Exhibit 'A'. The 'Commissioner' referred to in this letter is an appointive administrative officer in the United States Department of Commerce."

The "facts" referred to in paragraph 8 of that bill "leading up to" the opinion of the commissioner of patents are stated by the plaintiff in paragraph 10. The plaintiff also avers that the commissioner of patents erred in attributing fraud to the plaintiff in making the affidavit referred to by the commissioner; plaintiff denies that he was guilty of any unethical or unprofessional conduct.

In paragraph 13 plaintiff avers, "On February 3, 1949 counsel for plaintiff met with defendant Schmeltz and in the course of the meeting asserted that plaintiff was of the opinion that, because of prejudgment and personal animosities and antagonisms, he would not get a fair hearing by defendants, acting in their capacities as members of the Board of Managers of the Association. Defendant Schmeltz agreed that plaintiff's feeling was justified 'as to some' of the defendants. Plaintiff,

acting through his counsel, thereupon insisted on his right to be heard by an unbiased tribunal and requested that defendants, or any of them, forthwith file a complaint against plaintiff with the Board of Governance of the Supreme Court of Pennsylvania, and that defendants agree not to pursue any other proceedings until final action on the complaint filed with the Board of Governance. At that time defendant Schmeltz agreed to submit the proposal to the other defendants but, substantially conceding that the proceeding before the Board of Governance would result in a vindication of plaintiff, indicated that, because of personal animosities within the Association, defendants would probably insist on an agreement by plaintiff that regardless of the outcome of the proceeding he would resign his membership in the Patent Law Association. Plaintiff refused to make such an agreement."

In paragraph 14 he avers that he was informed "that defendants would not agree to file a complaint with the Board of Governance but that they will, after the expiration of the time for compliance, institute proceedings to expel plaintiff from the Association."

In paragraphs 15 and 16 he avers that defendants have prejudged his case and have conspired "irreparably to cause damage and injury to plaintiff by expelling him from the Association;" and that he "will be deprived of a fair and impartial hearing, as is clearly indicated by the letter of January 17, 1949, and defendants' conduct and statements prior and subsequent thereto."

Paragraph 18 avers "The expulsion of plaintiff from membership in The Patent Law Association of Pittsburgh would deprive him of valuable property rights, would interfere with his ability to earn a living, and, regardless of whether he might subsequent thereto, by resort to judicial process, compel his restoration to membership, would cause irreparable harm to his professional, social and civic reputation."

Defendants' letter of January 17, 1949, addressed to the plaintiff, signed by Andrew H. Schmeltz, President, is written on the letterhead of the Patent Law Association of Pittsburgh and is as follows: "At a meeting of the full Board of Managers of The Patent Law Association of Pittsburgh on January 13, 1949, full consideration was given to the facts leading up to, and the conclusions stated in the opinion of the Commissioner in the Peik interferences Nos. 74,841 and 75,177 which was handed down on July 19, 1948.

"As a result of this consideration, the Board adopted a resolution to the effect that you immediately resign from our association and that you also resign as a member of the bar of all courts before which you are eligible to practice and that you submit to this Board evidence of compliance therewith within twenty days of the receipt of this letter. In the event of your failure to comply with the demands of the resolution, it will be necessary for this Board to institute disciplinary proceedings against you.

"This letter is written in compliance with the requirements of the above mentioned resolution and on behalf of the Board of Managers of The Patent Law Association of Pittsburgh."

The right of property vested in members of unincorporated associations rests on the agreement of the associates and may vary with the nature and purposes of the association. The contract[1] creates the right and

---

[1] A number of common pleas decisions illustrate various phases of the subject: *Leech v. Harris et al.*, 2 Brewster 571 (Pa.) (1869); *Powell v. Abbott et al.*, 14 Phila. 104 (1880). See also *Lenahan v. Penn State League*, 21 Luz. L. Reg. 165 (1920); *Danner v. Rhoads*, 15 Berks Co. Law Journal 41 (1922). In *Metropolitan Base Ball Association v. Simmons et al.*, 17 Phila. 419 (1885) the opinion was written by President Judge THAYER, who said, "Now, membership of such an association, after it has been acquired in pursuance of the constitution, is a matter which is in itself legal property even in an unin-

even the state may not impair the obligation of the contract. Equity interferes in the interest of all the rights flowing from the contract relation.[2] Expulsion from such an association was considered by this Court as early as 1810 in *Com. v. St. Patrick's Benevolent Society*, 2 Binney (Pa.) 440, in which the society was required to restore to membership the expelled relator. See also *Manning v. Klein*, 1 Pa. Superior Ct. 210 (1896); *Heasley v. Operative Plasterer's and Cement Finishers International Ass'n*, 324 Pa. 257, 188 A. 206 (1936); *Law v. Chartered Institute of Patent Agents* [1919] 2 Ch. 276; *Fisher v. Keane*, L. R. 11 Ch. Div. 353 (1879); *State ex rel. Waring v. Georgia Medical Society*, 38 Ga. 608 (1869).

The court had jurisdiction over the parties and over the subject matter.[3] "Ordinarily" as was said in *Heasley v. Operative Association*, 324 Pa. 257, 261, 188 A. 206 (1936) "courts will not entertain jurisdiction in such cases unless the remedies provided by the laws of the organization have first been exhausted: *Maloney v. United Mine Workers of America*, (308 Pa. 251). But here no practical avenue of appeal within the association was open to plaintiffs. The International Executive Board had already acted in the situation by delegating McIlveen to reorganize the local." The paragraph

---

corporated association; the right of membership in such an association is recognized in the courts of Pennsylvania as property, and no man can be deprived of it without having forfeited it by some act which was lawful ground and cause of forfeiture, nor without notice and trial."

[2] The subject is considered by *Pound*, 29 Harv. Law Rev. 640 at page 677 (1916), and by *Walsh*: *Equity* (Callaghan and Co., 1930), p. 275 et seq.

[3] The Act of 1836, P. L. 784, sec. 13, 17 PS 281, provides: "The several courts of common pleas shall have the jurisdiction and powers of a court of chancery, so far as relates to: . . . V. The supervision and control of all corporations other than those of a municipal character, and unincorporated societies or associations, and partnerships."

from which we quote ends by the statement, "The law does not insist upon forms when resort to them would be an obvious futility." If therefore the defendants have disqualified themselves to sit in judgment, the courts must intervene.

At the hearing in the court below, parts of the bill were read in evidence, and the articles of association of the Patent Law Association were admitted. One of the defendants, Mr. Schmeltz, was called for cross examination.

We all agree that the defendants by their letter of January 17, 1949, written in the circumstances shown in the record, have disclosed such prejudice against the plaintiff and such prejudgment of the case, as to require them to withdraw from participation in the hearing on the charge (Article III, section 6, of the articles of association) that the plaintiff had "conducted his profession in an unethical and unprofessional manner" rendering him liable to expulsion. The text of the letter not only shows a disqualifying state of mind, but, so far as now appears in the record, shows an attitude requiring the exclusion of the defendant members of the board from participation as members of the trial tribunal. If the activity of the board was limited to the purposes of the members among themselves, it was ultra vires to demand plaintiff's resignation "as a member of the bar of all courts before which you are eligible to practice" etc. In considering disqualification, we next have their threat to institute disciplinary proceedings if plaintiff refused their demand to resign as a member of the bar. What had the defendants then to do with plaintiff's membership of the bar of this or any other court? Of what relevance was it in their inquiry? If the association was then acting in the public interest to prevent unworthy lawyers from practicing law, its duty in that interest should have required the institution of immediate disbarment proceedings if a proper case was submitted to

them. It appears clear to us that the defendant board, in violation of elementary principles, was acting as prosecutor and trial tribunal at the same time. When both functions, in rare cases of necessity, become united in a single person or tribunal, it is not only necessary that there be absolute impartiality but it is necessary that such impartiality appear without possibility of misunderstanding. The record now discloses complete disqualification.

It appears that on July 19, 1948, the patent commissioner had filed an opinion in which he had concluded that plaintiff on May 10, 1935, had made and filed an affidavit intended to mislead the patent office. Based on that transaction a complaint against plaintiff was lodged with the association by E. W. McCallister in November, 1948. Mr. McCallister was not then a member of the board. The complaint was received by defendant Schmeltz and was referred to the ethics and grievance committee.

Early in December, 1948, the board held a meeting at which the patent commissioner's opinion was discussed. The board determined that it would take jurisdiction of the complaint against the plaintiff, "by-passing" the ethics and grievance committee to whom Mr. Schmeltz had referred Mr. McCallister's complaint. Mr. W. Denning Stewart, who appears in the present case as counsel for defendants, and Mr. Schmeltz, defendant, went to Washington and discussed the case with the commissioner of patents and a Mr. Hall who is said to have participated in the patent cases as counsel opposed to plaintiff. Additional information was secured from a former associate of appellant named Webb. At this same meeting of the board in December, 1948, Mr. Mackey, a member of the board having resigned, the six remaining members, to fill the vacancy in the board, elected E. W. McCallister, who had made the complaint in November, 1948.

On January 13, 1949, the board met to consider the charge against plaintiff who had no notice of the meeting. The seven defendants participated but kept no minutes. Mr. Schmeltz reported his investigation and submitted certain material secured from Mr. Hall. The result of this meeting was that the letter of January 17th was drafted and after approval by all of the members of the board was sent to the plaintiff. On January 15, 1949, however, Mr. Schmeltz, as president of the board, wrote to each member of the board suggesting "that we seem to be denying the gentleman the right to be heard by our association provided for in the articles of the association." He suggested that the board refer to appellant's right to a hearing and offer him such hearing if he refused to resign. The other members rejected this suggestion. Mr. McCallister is still a member of the board and is one of the defendants and is therefore still engaged in bringing the plaintiff to trial before himself and other defendants. It thus appears that a party who made the first complaint to the board, has since, by the votes of the other members, become a member of the board in succession to a member [4] who resigned after the complaint reached the board. Mr. Schmeltz testified that his recollection was that at a meeting with counsel for the appellant, he, Mr. Schmeltz, made "a statement to the effect that perhaps some of them were prejudiced", meaning some of the members of the board. At page 90a

---

[4] In his opinion filed in the case Judge MONTGOMERY said, "If the Board of Managers deem it necessary to proceed further to determine plaintiff's right to membership in the Patent Law Association, they should proceed according to the By-Laws and practices even to the extent of filling the vacancies on the Ethics Committee and having it first consider the complaint. In filling those vacancies care should be exerted to assure the appointment of persons who have no personal relations or particular feeling toward plaintiff. When the matter is referred to the Board, Mr. McCallister should refrain from sitting since he filed the complaint.".

the following appears in the cross-examination of Mr. Schmeltz: "Q. Do you remember my expressing the opinion that no judicial or quasi-judicial body would, on the basis of the evidence against him, discipline Blenko? A. I do. I remember you say that. Q. Do you remember in substance agreeing with the statement? A. In substance agreeing with it. I said something to the effect I thought before a panel of fair and unprejudiced people you would have a good chance to get Blenko off."

In testifying about the investigation Mr. Schmeltz was confronted with the affidavit made by the plaintiff May 10, 1935, apparently the basis of the ruling by the commissioner of patents and therefore important in connection with the charges against plaintiff. He was asked to specify in the affidavit what it was that was submitted to the board as false at the meeting in Mr. McCallister's office. He ultimately answered as follows: "A. The exact wording of it appearing on page 20, the language [of Blenko's affidavit] is, 'that under all the circumstances the said abandonment may properly be said to have occurred through accident and mistake.' In connection with that I pointed out that in my opinion that was an argumentative conclusion that was intended, and could only have been added for the purpose of intending to mislead the Patent Office as to the circumstances as they existed at that time. Q. But you concede that is what you call an argumentative conclusion and not an assertion of fact? A. To me it appeared to be that." Later, at page 118a the witness stated that in his opinion and in the opinion of the board "there was something improper in the addition of that conclusion to this affidavit of Blenko's." Whatever construction shall ultimately be put upon it, the affidavit was made and filed in the patent office in 1935. At this stage of the record we can not pass on the charge based on the affidavit nor should we now determine the effect of the delay in the

proceeding with respect to it; that will be for consideration after defendant association shall have had an opportunity to answer and proceed to final hearing, if that course is taken.

Plaintiff has shown, prima facie, that in their deliberation concerning the charge brought against plaintiff, defendants have so conducted themselves as to require a court of equity to divest them of the power conferred on them by the association to try the plaintiff on the charge presented by Mr. McCallister. The learned chancellor erred in resting his refusal to enjoin on the grounds that plaintiff had failed to establish a property right and had also failed to show that he had been deprived of the remedies provided by the by-laws of the association.

The order refusing the preliminary injunction is reversed; the injunction granted February 17, 1949, by Judge PATTERSON is re-instated; the record is remitted with instructions to restrain the defendants, members of the board of managers of the Patent Law Association of Pittsburgh, from proceeding with the trial of the charge instituted on the complaint filed by Edgar W. McCallister in November, 1948, until final hearing of this cause, costs to abide the result.