457 P.2d 945

**ARIZONA OSTEOPATHIC MEDICAL AS-SOCIATION, a corporation, and Phoenix General Hospital, Inc., a corporation, Appellants,**

**v.**

**Daniel T. FRIDENA, Appellee.**

**No. I CA–CIV 670.**

Court of Appeals of Arizona.

Division 1.

Aug. 20, 1969.

Rehearing Denied Sept. 22, 1969.

Lewis, Roca, Beauchamp & Linton, by Roger W. Kaufman, Phoenix, for appellants.

Dykes, Selden, Bayham & Fike, by Alan Philip Bayham, Phoenix, for appellee.

MOLLOY, Judge.

This is an appeal from the issuance of two writs of mandamus [1] requiring that the petitioner, an osteopathic physician, be restored to membership in the Arizona Osteopathic Medical Association and restored to membership and to his position on the staff of the respondent Phoenix General Hospital, Inc.

There are two questions raised on review. The first concerns whether there was suffi-

cient notice and an opportunity to be heard afforded to the petitioner prior to his expulsion from the Association on September 22, 1965.

Under the Bylaws of the Arizona Osteopathic Medical Association, all ethical complaints are referred to its Committee on Ethics. This Committee is required to make an investigation of the complaint against one of its members and, at the conclusion of its investigations, it may dismiss the complaint, reprimand the accused member, or it may recommend that the accused's membership in the Association be suspended or revoked. If the latter is its decision, the Committee is required to file written charges with the Board of Trustees. When such charges are filed, the Bylaws require that the Committee " * * * shall send a copy thereof by registered mail to the accused member." The Bylaws further provide that "[u]pon *receipt* of such notice from the Committee, the accused member shall have ten days in which to notify in writing the Board of his rejection of the conclusions and decision of the Committee on Ethics and if he so desires, he may apply in writing to the Board for a hearing which shall be granted to him." (Emphasis added.)

In this case, the Committee on Ethics received a number of complaints pertaining to the petitioner which generally involved overcharging and continuing to treat patients when his services were no longer necessary. The complaints upon which the Committee acted were received in the latter part of 1964 and early 1965. During these years, the Committee on Ethics was co-chaired by Paul Edgar and C. Condie Call, doctors of osteopathy. However, as to these particular complaints, Dr. Call served as the "acting chairman" and was the per-

---

1. In Blende v. Maricopa County Medical Society, 96 Ariz. 240, 393 P.2d 926 (1964), our Supreme Court held that a writ of mandamus is an appropriate remedial measure to restore a medical doctor to membership in the Maricopa County Medical Society, when membership in this society was a prerequisite to access to local hospital facilities. In this case, it is admitted that, at the time with which we are concerned, it was a prerequisite to use of the Phoenix General Hospital that doctors be members in good standing of the Arizona Osteopathic Medical Association. The historical origin of the use of a writ of mandamus for this purpose is delineated at 34 Am. Jur. Mandamus § 98, at p. 885.

son upon whom the Committee relied to give notice of its various proceedings to the petitioner. At all times concerned, Dr. Call was involved in a bitter controversy with the petitioner over their joint business interests in two other osteopathic hospitals in the Phoenix area. Dr. Call, in his testimony to the trial court, frankly admitted that he bore "resentment" against petitioner.

It is clear in this record that the Committee mailed various notices to the petitioner of its various meetings and did on occasion telephone him to inform him of a meeting. Most of the meetings of the Committee were ignored by the petitioner but he did appear before it on at least two occasions. At the time of the first of these appearances, the Committee voted to absolve him from any censure, but subsequently voted to bring formal charges against him before the Board of Trustees.

The undisputed evidence is that the petitioner kept rather unusual office hours, usually not coming into his office until 6 p. m., and then working on to a late hour. The petitioner's treatment of registered mail was also unusual. He had instructed the personnel in his office, which was open during the daytime, not to accept registered mail, and, when he received notices of the arrival of such mail, the petitioner habitually failed to pick up the mail from the post office. The fact that the petitioner had these eccentricities was well-known to the members of the Committee on Ethics, and to the Board of Trustees of the Association.

The formal complaint filed against the petitioner by the Ethics Committee was submitted to the executive director of the Association sometime in August, or in September, of 1965. The executive director thereupon mailed a copy of the complaint to the petitioner, by registered mail, which apparently [2] contained a notice to appear before the next meeting of the Board of Trustees to show cause why his membership in the

Association should not be subject to disciplinary action.

The next meeting of the Board of Trustees was held on September 22, 1965, and at this meeting petitioner did not appear. At the time of this meeting, the Board was well aware that the petitioner had not received a copy of the complaint filed against him because the complaint had been returned to the Association by the postal authorities prior to this meeting. Other than the mailing of this registered letter, no other effort was made to notify the petitioner of the meeting at which he was expelled. On the afternoon of the meeting, Dr. Call and the petitioner were together, discussing mutual business affairs, but Dr. Call made no mention to the petitioner of the impending meeting in the evening at which disciplinary action was to be determined. The petitioner testified that when he had received notices of registered mail previously, in connection with the investigation of the Committee on Ethics, he had talked over the telephone with Dr. Call to inquire as to the purpose of these communications from the Association and had been informed by Dr. Call: "It wasn't important. Forget it. I'll take care of it for you."

The charges against the petitioner were presented to the Board at its September 22 meeting by Dr. Call and expulsion was voted. The petitioner was given no notice whatsoever of any proceeding to revoke his membership in the Phoenix General Hospital and to remove him from its staff. This action was taken on September 23, 1965, on the basis of the expulsion on the previous day by the Association. Notice of revocation of his hospital privileges was hand-delivered to the petitioner on September 24, 1965.

This case was submitted to the court without a formal trial on the basis of depositions and the testimony of petitioner taken in a related civil action. This other civil action was tried before the same trial

---

2. The record does not contain a copy of this complaint and we are relying upon the testimony of Mr. Stanley N. Schultz, the executive director, as to its contents.

judge who rendered decision of this case The evidence submitted contains very little evidence as to the substantive reasons for the expulsion of the petitioner, the contentions below and here being centered on the question of whether there was procedural due process. We believe that the decision reached, nullifying the expulsions, is justified from this standpoint.

■ When membership in an association or corporation is a necessary prerequisite to practicing a profession or a trade, the accused member has a right to a reasonable and adequate notice of the hearing at which the termination of his membership is to be considered and, at such a hearing, he must be afforded a reasonable opportunity to be heard. *See* Cunningham v. Burbank Board of Realtors, 262 Cal.App.2d 211, 68 Cal. Rptr. 653, 655 (1968), and cases cited; Swital v. Real Estate Commissioner, 116 Cal.App.2d 677, 254 P.2d 587, 588 (1953); The Florida Bar v. Fussell, 179 So.2d 852 (Fla.1965); Virgin v. American College of Surgeons, 42 Ill.App. 352, 192 N.E.2d 414, 423 (1963); Berberian v. Lancaster Osteopathic Hospital Ass'n, Inc., 395 Pa. 257, 149 A.2d 456 (1959); Blenko v. Schmeltz, 362 Pa. 365, 67 A.2d 99, 20 A.L.R.2d 523 (1949). *See also* Developments in the Law: Judicial Control of Actions of Private Associations, 76 Harv.L.Rev. 983, 1028 (1963); Annot., 20 A.L.R.2d 531, 542; and the articles collected in the paragraph corresponding with unofficial headnotes 2–4 in Higgins v. American Society of Clinical Pathologists, 51 N.J. 191, 238 A.2d 665, at 669–670 (1968).

■ When there is a clearly provided requirement of notice in the controlling regulations of such a society for the giving of notice, it is our view that such requirements must be substantially met. *See, e. g.,* Berberian v. Lancaster Osteopathic Hospital Ass'n, Inc., *supra,* at 149 A.2d 459; Virgin v. American College of Surgeons, *supra*; American Institute of Real Estate Appraisers v. Hawk, 436 S.W.2d 359, 364–365 (Tex.Civ.App.1968); 76 Harv.L.Rev. 983, at 1021 et seq.

■ However, if such bylaw standard is insufficient to provide "* * * notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * *" Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950), then such additional notice as may be necessary to meet this constitutional minimum must be given.

When a person to be given notice intentionally avoids receipt of notice, then there may be occasions when a court is justified in holding that such person has waived his constitutional rights in this regard. *See* Robel v. Highline Public Schools, 65 Wash. 2d 477, 398 P.2d 1 (1965). But the evidence here does not compel a reversal of the trial court's finding that insufficient notice was given.

■ While the petitioner was undoubtedly extremely lax in representing his interests before the Committee on Ethics, we do not believe that this necessarily waived his right to be given notice of the hearing at which effective action could be taken to suspend or expel him. The petitioner may very well have come to the conclusion that, with Dr. Call in charge of the Committee making the preliminary investigation, his chances of avoiding formal charges were not bright. However, the petitioner, as a former member of the Committee on Ethics and a former member of the Board of Trustees, must have known that the Bylaws foreclosed the Committee on Ethics from taking any final action against him, other than a reprimand.

■ The Bylaw provisions involved here are at least ambiguous as to whether the registered letter notice of the complaint must be received in order to be effective. But, regardless of the construction in this regard, we believe the trial court was justified in finding that the notice given did not meet constitutional minimums. Among the "circumstances" which we believe the Board of Trustees should have taken into consid-

eration in this case were the eccentricities of this particular member, who as a matter of practice, did not receive registered mail. It would have been a small burden to have sent a copy of these charges to the petitioner by ordinary mail, which the Committee on Ethics and the Board of Trustees knew the petitioner customarily received. The fact that the respondents were able to notify petitioner so promptly of this expulsion is some indication that, if there had been a good faith effort to notify the petitioner of this particular proceeding, he would have received notice of it.

The other question presented for review is whether the pendency of another civil action brought by the petitioner, as plaintiff, against these respondents and others, and asking for damages and an injunction restoring him to membership, deprived this court of jurisdiction to proceed with this subsequently filed mandamus action. Reliance is taken upon the law of abatement and decisions such as Davies v. Russell, 84 Ariz. 144, 325 P.2d 402 (1958), and Falcone v. Middlesex County Medical Society, 47 N.J. 92, 219 A.2d 505 (1966).

■■ These decisions, and many others, establish that when there are two actions pending between the same parties as to the same cause of action, in the same jurisdiction, on proper motion, the second action should be abated, *see* Allen v. Superior Court of Maricopa County, 86 Ariz. 205, 344 P.2d 163 (1959). But the defect in the later-filed case is not such as to render proceedings in that action void. Crook v. Crook, 19 Ariz. 448, 452, 170 P. 280, 282 (1918), and *Allen, supra,* 86 Ariz. at 209, 344 P.2d 163. A plea in abatement because of another action pending is dilatory in nature and not favored by the courts. Perry v. Jordan, 34 Cal.2d 87, 207 P.2d 47, 48 (1949). If, without persisting in an objection to the second action to the extent of obtaining a writ to prohibit further proceedings, *see* Allen v. Superior Court of Maricopa County, *supra*, the parties proceed to a trial in the second action and obtain an adjudication on the merits, it is our view that such an adjudication has efficacy.

■ Our Constitution proscribes reversal for "technical error in pleadings or proceedings." Ariz.Const. art. 6, § 27, A.R.S. In a jurisdiction in which the trial court has the prerogative, on its own motion, to separate out issues for trial, Rule 42(b), R.Civ.P., 16 A.R.S., as amended, it seems less than fundamental that this trial took place in a proceeding that may have had the wrong number.

The following stipulation indicates that *these* parties were ready and willing to submit *this* controversy to *this* judge:

> "Counsel for petitioner and respondents hereby stipulate *that the question of whether or not petitioner has a right to a writ of mandamus may be decided by this Court* based upon the pleadings filed to date, the Derfelt transcript [the related civil action], the depositions taken in this cause, and all memoranda of law." (Emphasis added)

Once a case has been submitted in this manner and an adjudication rendered on the merits of a controversy, it is our view that it it too late then to question whether the second action should have been abated in preference to the first.

Judgment affirmed.

HATHAWAY, J., concurs.

Note: This cause was decided by the Judges of Division Two as authorized by § 12–120, subsec. E.

KRUCKER, Judge (dissenting).

I regret that I must dissent, not being able to agree with the opinion of my esteemed colleagues on the question of notice. I believe this to be a question of law and not a question of fact. It is undisputed that notice was sent to Dr. Fridena in strict and full compliance with the bylaws of the Association. This is admitted by Dr. Fridena himself in his testimony.

I believe, contrary to the majority opinion, that the Association did follow its bylaws to the letter and that any failure to receive the notice was entirely due to the fact that Dr. Fridena, through his own ac-

tions, circumvented the receipt of notice by instructing his employees not to receive registered mail and having them return the same to the post office. Dr. Fridena received these registry slips, had his employees investigate at the post office and knew that the notices were from the Association.

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70. S.Ct. 652, 94 L.Ed. 865 (1950), cited by the majority, is not in point. In that case, the trust company failed to send notice by mail to those members of a trust fund for which it had addresses, and, instead, notified everyone by publication. The Court clearly held that those with known addresses had to be sent individual notices. Such is not the case here.

The Arizona Supreme Court has held that registered mail *is* a method reasonably calculated to give notice under the due process concepts, and that proof of mailing of the registered letters is compliance with those requirements, whether or not the individual actually receives the notice. Goodman v. Jones, 102 Ariz. 532, 433 P.2d 980 (1967).

In Robel v. Highline Public Schools District No. 401, King County, 65 Wash.2d 477, 398 P.2d 1 (1965), cited by the majority, a school teacher was sent regular registered mail and at least one notice of the arrival of such. She knew the customary procedures and that her employment contract was recommended for non-renewal, yet she failed to call for or request delivery of her mail. The court held her dismissal was valid and that she could not close her eyes to such notice. The majority opinion states that the instant case does not have the same compelling evidence as *Robel* but I disagree. In this case, formally drawn charges were sent by registered mail to Dr. Fridena, who had at one time been a member of the Ethics Committee. He knew that charges were pending because he had previously appeared before that Committee and received a letter of reprimand. Dr. Fridena asked his secretary who had been sending the registered mail and was told it was the Association. He still refused to let the office receive the mail. I think *Robel* is clearly in point in this case.

I strongly disagree that the Association was bound to take into consideration the peculiar eccentricities of this particular member by sending him regular mail and/or phoning him until he had actual notice. I believe the majority view stated in 39 Am.Jur. Notice § 12 is the better rule:

"When a party has information or knowledge of certain extraneous facts which of themselves do not amount to, nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon an inquiry * * * then the party is absolutely charged with a constructive notice. * * * A person has no right to shut his eyes or his ears to avoid information, and then say that he had not notice; he does wrong not to heed the 'signs and signals' sent to him."

There is some testimony that Dr. Fridena inquired of Dr. Call about the notices. Dr. Call not only denies these conversations, but I believe a board member should not deal individually with a member against whom a complaint is pending. It must also be noted that Dr. Fridena was fully familiar with the by-laws and rules of the Association and knew the registered mail from the Association had a special and important connotation. I cannot conceive of two rules coexisting, one for members who are eccentric and another for members who are not. If this were the case, any member of the Association could avoid notice by acting in an abnormal and eccentric manner in the way he handled his business and ran his office. I do not believe that the rule as to giving notice to a member, as provided for in the by-laws, should differ or be changed to fit the odd and peculiar notions of a particular member.

I concur with the majority position on the question of splitting of actions.

The judgment of the trial court in granting the writ of mandamus should be reversed.