## Churchill's Restaurant, Inc. v. Timeless Towns of the Americas, Inc.

*John A. MacPhail*, for plaintiff.
*Clyde W. McIntyre*, for defendant.

SPICER, *P.J.*, July 18, 1978—Plaintiff conducts a restaurant operation or business in space leased from defendant in a commercial center known as International Village. The leasing arrangements began February, 1973. In April, 1978, defendant landlord obtained a judgment of possession from a magistrate and plaintiff tenant has appealed that case and instituted this action.

Tenant has asked for preliminary injunctions restraining landlord from pursuing means of obtaining possession other than in the case presently on appeal and also restraining landlord from changing the character of the commercial develpment until after a trial can be held and a final determination made. We granted an injunction prohibiting multiple actions for possession after tenant filed waivers of objections to form, content and service of notice to quit, and now consider the request for an injunction prohibiting landlord from changing the character of the development pending final determinations.

At the hearing in this case, George Shamounki, president of corporate tenant, testified that he had invested $185,000 in the leased premises. According to his testimony and the testimony of his witnesses, the commercial development began with a design and/or concept of historical decor. The center envisioned 66 shops, each specializing in something. Many of these shops never opened, but of the 55 opened and operating in 1974, there are 13 now under lease and operating. Of these 13, six expire in July, 1978, and there are no plans for renewal.

R. L. Michaels, Limited has taken over 11 shops and is operating them. To some extent, this corporate entity has interlocking officers with defendant.

All witnesses testified that hope and expectations had not been fulfilled. One of tenant's witnesses said that at times it was "downright humiliating" for her to keep her shop open because of the total lack of business. However, according to the lease agreements, tenants were

required to maintain regular hours and landlord has kept records of when shops failed to conform to schedule.

Tenant and his witnesses maintained that the lack of business was due to landlord's failure to vigorously promote the project. Landlord attributed the decline to problems linked with national economic factors, competing institutions, and the need for something to stimulate public interest.

The "something" the landlord has seized upon is to transform the area into a "peddlers' village." Tenant protests that crowds who come to buy 25 cent items do not eat in haute cuisine. Tenant states that the "peddlers" of the "peddlers' village" are in fact unfair competition who pay no fixed rental, attract crowds with small spending habits, and actually compete with some of the shops in the center.

It is obvious after considering testimony that the economic situation in the development is unfavorable. It is further obvious that landlord has already embarked upon a campaign to change the concept of the development. Most of the exhibits relating to advertisements stressed, in one way or the other, concepts of a "flea market" or a "peddlers' village."

Following the hearing, the case was scheduled for argument. After the hearing, but before the argument, landlord added as a ground for its request for dismissal of tenant's petition lack of jurisdiction of the court because of failure by tenant to join all indispensable parties.

The landlord was somewhat vague at the argument as to what it considered to be an indispensable party. However, it urged that at least

all the other shopowners and all the persons whom landlord had licensed to peddle should be joined in this litigation.

The notes of testimony of the hearing were not transcribed and the court is relying on memory and its trial notes. The court can find no testimony directly bearing on this point. The landlord's witnesses had testified that some arrangements had been made with unspecified numbers of people to use the village and considerable money had been expended to promote the "flea market" or "peddlers' village" concept. The landlord had not filed preliminary objections under Pa.R.C.P. 1028(c) on this issue.

It is not clearly apparent at this stage that the landlord's position is well-founded. Perhaps if the issue had been timely raised, evidence could have been introduced pertaining to it. Awaiting as it did, the conclusion of the hearing to raise the issue, the landlord is bound to the record as it exists. It is the landlord's burden to show there are indispensable parties not joined: Alumbaugh v. Wallace Business Forms, Inc., 226 Pa. Superior Ct. 511, 313 A. 2d 281 (1973). The court cannot, at this stage, find that other parties have such an interest in this litigation as to make them indispensable to this litigation. Therefore, the objection to jurisdiction based upon failure to join indispensable parties is overruled.

Although appellate cases dealing with the right of parties to preliminary injunctions sometimes speak of a prima facie showing of a right to a final injunction: Blenko v. Schmeltz, 362 Pa. 365, 67 A. 2d 99 (1949); the overwhelming majority of cases require that "in order to sustain a preliminary

injunction the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." Township of South Fayette v. Com., 477 Pa. 574, 385 A. 2d 344 (1978).

In considering whether plaintiff's right to relief is clear, the court must consider the testimony and the documents involved. A review of the lease documents dated February 17, 1973, show the following:

1. In the recital, it is stated that landlord is constructing "an historical and commercial development."

2. In Section 2, landlord agreed to complete the exterior and interior of the premises "compatibly with Timeless' requirements of historical accuracy and uniformity of decor."

3. The word "bazaar" is used in the lease several times. For example, the development is referred to as "International Village Bazaar" in the recital and as the "Bazaar" in paragraph 3.

4. In exhibit C, "Description of Landlord's and Tenant's Work," under 1, Landlord's Work, it was provided in section B that landlord would provide and construct a store front. The following sentence followed the requirement that tenant select a design prepared by landlord's engineering department: "The authenticity of store fronts is of extreme importance to landlord, and no deviation from landlord's designs will be permitted without expressed permission of landlord."

5. In section C of the same exhibit C, it was provided that: "Because of Landlord's concern with historical authenticity and compatibility of decor in the development, Landlord will provide interior finish, providing a suitable surface and appropriate

colors. Tenant's desires with respect to colors of interiors will be consulted, but Landlord's decision will be final."

6. Finally, under 2, Tenant's Work, General Statement, it was provided that "It is the intention of the Landlord to finish the interior of all premises to a much greater degree than in normal shopping center contracts."

7. In all the statements above, the landlord's position was recited as being a matter of intent or interest, but it was the tenant who undertook some obligations as a result of this. For example, because it was the intent of the landlord to finish the interior to a greater degree than normal, the tenant obligated itself to securing the prior approval of the landlord for work done by tenant.

8. The only affirmative duties of the landlord contained in the lease related to construction, a covenant not to lease other premises within the "Bazaar" to another tenant whose primary or main business was the same as tenants, and maintenance.

At first blush, it would seem that the obligations are all one-sided. Another example, typical of this is 4 (e), page 2 and 6 (e), page 3. In 6 (e) it is stated: "Tenant specifically understands and accepts the propositions that the preservation of historic accuracy and atmosphere is of primary importance in the successful operation of the development, and to that end agrees to, insofar as possible, require the dress of his employees with whom customers come in contact to be in keeping with the decor and atmosphere of the development, and the specific section in which the premises are located and to cooperate in complying with reasonable requests and

suggestions of Landlord for the preservation of the decor and atmosphere."

On closer examination, it is evident that a proposition must be proposed by someone. If it is in the form of an offer which "tenant specifically understands and accepts," then an agreement is formed that must place some obligations on the proposer, in this case, the landlord.

The testimony introduced at the hearing leads the court to conclude that the parties intended the landlord to assume some duties concerning the decor and historic authenticity of the development. Tenant urges that this is clearly the case and that it has a right to require adherence by the landlord.

However, a step causing the court to falter at this point is the meaning of such terms as "historic authenticity" and "bazaar." "Historic" in the Gettysburg area generally refers to a Civil War era, but this lease is for an English style restaurant that cannot easily be fitted into that scheme. The lease is vague as to this point. There is a hint that decor and historic authenticity exist only in the mind of the drafter. Perhaps the tenant in this case was convinced to pursue an illusory grail.

We think there is a possibility that parol testimony could be used to dispel the fog obfuscating these concepts. Where there is a latent ambiguity in a written instrument, parol evidence is admissable to explain the terms: Kohn v. Kohn, 242 Pa. Superior Ct. 435, 364 A. 2d 350 (1976); In re Spectrum Arena, Inc., 340 F. Supp. 784, affirmed 462 F. 2d 156 (1971). However, at this stage in the litigation, the rights of the tenant are not clear enough to justify the issuance of a preliminary injunction.

Therefore, the request for a preliminary injunction prohibiting landlord from changing the

character of the development is refused according to the attached order. Since this opinion sets forth the facts and conclusions of law which the court has found, no separate findings and conclusions will be entered.

The court makes no finding concerning the requirements that the need for relief must be immediate and the injury must be irreparable.

## ORDER

And now, July 18, 1978, plaintiff's request for a preliminary injunction prohibiting defendant from changing the character of the development known as International Village or International Village Bazaar is hereby refused.