Heasley et al. *v.* Operative Plasterers & Cement Finishers International Association, Local No. 31, et al., Appellants.

Argued October 1, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John F. Gloeckner,* for appellants.

*Bennett Rodgers,* for appellees.

OPINION BY MR. JUSTICE STERN, November 23, 1936:

Local No. 31, named as a defendant, is the Pittsburgh unit of an international unincorporated organization known as the Operative Plasterers and Cement Finishers International Association. In June, 1932, it called a strike despite the disapproval of the parent body, and, when it continued in its rebellious attitude, defendant Joseph McIlveen, a vice-president of the international association as well as a member of the local, was instructed by the International Executive Board to take charge of the situation and reorganize the local union. He removed its officers and formed a new group, excluding the opposition faction among whom were many of the present plaintiffs. The reorganized local then

brought a bill in equity against the members thus eliminated and obtained an injunction against their interference with the local in the conduct of its affairs and directing them to turn over any of its property in their possession. Defendants in that proceeding complied with the decree, but the local still refused to recognize them as members and prevented them from working on union jobs. Plaintiffs then filed a bill in equity in the present cause, praying for a mandatory order upon the local to readmit them to membership. The court, after hearing testimony, filed an adjudication in favor of plaintiffs, and decreed that they be restored to membership in the local and that defendants be enjoined from interfering with plaintiffs' employment upon union work "when said employment is in accordance with the union scale of wages and the rules and regulations, constitution and by-laws of the said defendant organization." From this decree defendants appeal.

The facts, thus briefly summarized, were found by the learned chancellor upon competent and adequate testimony.

That the court of equity had jurisdiction of the cause of action admits of no question. The Act of June 16, 1836, P. L. 784, section 13, paragraph 5, gives the courts of common pleas "the jurisdiction and powers of a court of Chancery, so far as relates to—The supervision and control of all . . . unincorporated societies or associations. . . ." It is true that, before such power is exercised, it must be shown that a right of property is involved: *Kearns v. Howley*, 188 Pa. 116, 120; *Hutchinson v. Goshorn*, 256 Pa. 69, 71; *Kenneck v. Pennock*, 305 Pa. 288, 290; *Spayd v. Ringing Rock Lodge*, 74 Pa. Superior Ct. 139, 141-2. In the present case plaintiffs have definite property interests which are entitled to protection. The constitution of the international association provides for death benefits to members in amounts proportioned to length of membership, and also for benefits for physical incapacity arising after

twenty-five consecutive years of membership. The expulsion of plaintiffs from the association carried with it, therefore, a deprivation of their interest in the accumulated and future funds from which such benefits were to be paid. Moreover, it has been practically impossible for them to obtain work in their trade since their loss of membership in the union. Not only did they themselves testify to this fact, but in the answer filed by defendant McIlveen in the present proceedings it was admitted that "said Joseph McIlveen, acting under authority as aforesaid, renewed *all* contracts with *all* of the plastering contractors in the Pittsburgh district, for the employment of the members of defendant organization, wherein and whereby the contracting parties have agreed that *only members of the defendant organization shall be employed,* according to the tenor of the various contracts." (Italics supplied.) The right to contract for work is one of the most important of property rights, and therefore the power of a court of equity may properly be invoked to restrain its impairment. While defendants insist that plaintiffs forfeited their rights to membership and their interest in the beneficial funds by failure to pay dues, there was no evidence to substantiate this claim, but on the contrary considerable testimony by plaintiffs to prove that they had met their obligations in full to the time of their expulsion. If the local as a unit did not turn over the dues to the parent organization this should not militate against their individual rights.

Plaintiffs were eliminated from membership without any semblance or pretense of a trial, but merely by the summary action of defendant McIlveen, who dropped them from the roll largely because they would not retract a letter which they had written in criticism of the attitude of the international body in regard to the strike. Typical of the evidence as to how plaintiffs were deprived of their membership is the following testimony given by one of them: "Q. Did you ever voluntarily with-

draw from the membership in Local No. 31? A. No, sir. Q. When did you cease to be a member? A. I never ceased, I never had a notice, never had a hearing, never had a trial or anything. Q. How do you know that you are no longer a member? A. I went to a meeting one night and a policeman was standing at the door." The by-laws of defendant local provide that in case of violation of the laws or rules of the organization written charges shall be presented, and the accused member notified and cited to appear before the executive board at a meeting of the association. Even if the by-laws were silent upon the subject, the law would insist upon some form of judicial proceedings being employed before a member be expelled and thereby deprived of his property rights. The court may "review the form of proceedings to see whether the tribunal has acted within its jurisdiction and in the line of order . . .": *Maloney v. United Mine Workers of America*, 308 Pa. 251, 257.

Defendants contend that plaintiffs should have sought redress within the association before appealing to the court. Ordinarily courts will not entertain jurisdiction in such cases unless the remedies provided by the laws of the organization have first been exhausted: *Maloney v. United Mine Workers of America*, supra. But here no practical avenue of appeal within the association was open to plaintiffs. The International Executive Board had already acted in the situation by delegating McIlveen to reorganize the local. When interrogated concerning the expulsion of plaintiffs without a hearing, McIlveen testified that "It was an action by the International Executive Board." To the question "It was your decision in July of 1932 which excluded them, wasn't it?" he replied: "No, sir, it was the International decision and I was instructed to carry out their instructions." Indeed, in defendant's replication it is pleaded that "Joseph McIlveen acted under the advice and with the approval of the International Officers," and that "The actions of Joseph McIlveen in so far as

Local No. 31 and the International Association are concerned with the plaintiffs, was the carrying out of decisions of the International Executive Board." Since, therefore, the action complained of was that of the International Executive Board itself, recourse to it as an appellate tribunal was foreclosed. Nor was it possible to appeal to the biennial convention of the parent body, for the reason that a convention had not been held since 1928 and, as far as the record discloses, none is in contemplation. The law does not insist upon forms when resort to them would be an obvious futility.

It is urged that the defendants in the present case should have been the international instead of the local organization, because, it is contended, members can be admitted or reinstated only by the former. It appears, however, from section 75 of the International constitution that "No local shall be allowed a secret ballot when voting on applicants for membership, but shall appoint committees to investigate and report on the mechanical ability of the applicant. The committee report to be acted upon in open meeting and action taken on same in accordance with the local laws." This indicates that an applicant becomes a member through the action of the local union. Moreover, according to a finding of the chancellor, the local organization is provided with the procedural machinery for expelling members, at least in the first instance.

The court below found that the decree in the injunction proceedings brought by the local did not constitute an expulsion of plaintiffs from membership nor warrant such action being taken without a trial. Questions as to their conduct before and after that decree, their loyalty to the principles of the organization, their payment of dues, and all other issues involved, can properly be determined only by judicial proceedings within the association, with the right to plaintiffs to be notified of the charges against them and to present testimony and argument in their defense. If such proceedings were con-

ducted, the court could not review on its merits a decision thus reached: *Lodge No. 19 v. Svi Sveti,* 323 Pa. 292. Because, however, no trial has been afforded plaintiffs before depriving them of membership with its accompanying property rights, the court below properly decreed that they should be reinstated to membership and not interfered with in their employment upon union work provided that they observe the rules and regulations, constitution and by-laws of the defendant organization.

The decree is affirmed; costs to be paid by appellants.