International Organization Masters, Mates and Pilots of America, Local No. 2, Appellant, *v.* International Organization Masters, Mates and Pilots of America, Inc.

Argued April 16, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William A. Goichman,* with him *Rosenzweig, Krimsky & Goichman,* for appellants.

*Richard H. Markowitz,* with him *Richard Kirschner,* and *Wilderman, Markowitz & Kirschner,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, April 21, 1964:

Plaintiff-appellants, former members of the International Organization Masters, Mates and Pilots

of America, Local No. 2, filed a complaint in equity in the Court of Common Pleas No. 6 of Philadelphia County against that union and its officers. In the complaint, appellants sought reinstatement as members in good standing and compensatory and exemplary damages. Preliminary objections were filed by the defendant union and its officers. These were sustained by the court below which held that its jurisdiction was preempted by that of the National Labor Relations Board and that plaintiffs had failed to exhaust their internal union remedies. Appellees rely upon these grounds to urge that the decision below be affirmed.

To support their appeal, appellants rely heavily on *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S. Ct. 923, 2 L. Ed. 2d 1018 (1958). In that case, a former union member brought suit in the equity courts of California to compel his reinstatement in the union and to obtain damages. The Supreme Court of the United States, in an opinion by Mr. Justice FRANKFURTER, held that the state court had jurisdiction to order plaintiff's reinstatement and to award damages to compensate for suffering and loss of wages. Id. at 620-21, 78 S. Ct. at 925.

Three cases are relied upon by appellees to demonstrate that the *Gonzales* case has been overruled by implication: *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959); *Local 100, United Ass'n of Journeymen and Apprentices v. Borden,* 373 U.S. 690, 83 S. Ct. 1423, 10 L. Ed. 2d 638 (1963); and *Local No. 207, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers Union v. Perko,* 373 U.S. 701, 83 S. Ct. 1429, 10 L. Ed. 2d 646 (1963).

Recently, in *Smith v. Pittsburgh Gage and Supply Co.,* 412 Pa. 171, 174-77, 194 A. 2d 181, 182-84 (1963), a unanimous opinion, our Court discussed the applica-

tion and effect of these cases, saying: "The basic rule delineating jurisdiction in this area of the law [preemption of state jurisdiction] was recently reiterated by the United States Supreme Court in Local 100 v. Borden, 373 U.S. 690, 693, 83 S. Ct. 1423, 1425: 'This Court held in San Diego Building Trades Council v. Garmon, 359 U.S. 236, [79 S. Ct. 773], that in the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of §7 or the prohibitions of §8 of the National Labor Relations Act.' . . ."

. Our Court then stated: "To the general rule defining jurisdiction, the U. S. Supreme Court has recognized exceptions in the case of certain activities, even though such activities are arguably, or even concededly, within the protections of §7 or the prohibitions of §8 of the Act. As examples, the Garmon rule has been held inapplicable or irrelevant . . . (c) where 'the lawsuit [is] focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of employment and . . . the principal relief sought [is] restoration of union membership rights.'[1] (International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S. Ct. 923)."

Accord, *Cosmark v. Struthers Wells Corp.*, 412 Pa. 211, 217-18, 194 A. 2d 325, 327-28 (1963), cert. denied, 376 U.S. 962, 84 S. Ct. 1123, 11 L. Ed. 2d 980 (1964).

The court below attempted to distinguish the case at bar from *Gonzales* in the following way: "In the

---

[1] "As Gonzales is analyzed in Borden, supra, 83 S. Ct. 1427." (Footnote in the original, renumbered. Other footnotes omitted.)

instant case, our jurisdiction is challenged generally whereas in Gonzales, only the power of equity to award the particular damages was challenged." This reasoning ignores the following language of the U. S. Supreme Court: "That the power of California to afford the remedy of reinstatement for the wrongful expulsion of a union member has not been displaced by the Taft-Hartley Act is admitted by petitioners [the union]. *Quite properly they do not attack so much of the judgment as orders respondent's reinstatement." Gonzales,* supra, 356 U.S. at 619, 78 S. Ct. at 924. (Emphasis added.)

In a further attempt to distinguish the instant case from *Gonzales* and to avoid the applicability of the rule there set down, appellees cite our decision in *Wax v. International Mailers Union,* 400 Pa. 173, 161 A. 2d 603 (1960), wherein we also had occasion to state the *Garmon* rule. We there said (at 181, 161 A. 2d at 607): "In the matter now before us, the appellee seeks reinstatement only because, as he alleges, the direct result of the expulsion has been to prevent him from continuing work as a mailer. He makes no claim for damages based on injury to his *rights as a member* of the appellant unions, which in a proper case, as we stated in Falsetti [*v. Local No. 2026, UMW,* 400 Pa. 145, 161 A. 2d 882 (1960)], our courts will protect. Therefore, the crux of the appellee's case is not injury to the *union-member* relationship, as it was in Gonzales, but rather injury to appellee's *employment* relationship by reason of appellant's arbitrary and unreasonable action in expelling him." (Emphasis in the original.) This last comment is applicable also to *Borden* and *Perko,* supra.[2]

---

[2] In the *Borden* case, the issue involved a union hiring hall which refused to send applicant to a particular job which he had requested. The U. S. Supreme Court held that the crux of Borden's action concerned his employment relations, not his status in the

Appellees' assertion that appellants are seeking redress for injury to their employment relationship flies in the face of the words of the complaint itself,[3] language in the opinion of the court below, and the holding of the U. S. Supreme Court in the *Gonzales* case. Appellants candidly noted in their brief that in order to come within the rule enunciated in *Gonzales*, "We referred to the complaint in the Gonzales case and patterned the instant complaint after it." Noted the court below, "Furthermore, plaintiffs drafted their complaint in terms identical with those in Gonzales." The Supreme Court ruled in that case that the crux of the action was injury to the union-member relationship. "The Gonzales decision, it is evident, turned on the Court's conclusion that the lawsuit was focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights. In this posture, collateral relief in the form of consequential damages for loss of employment was not to be denied." *Local 100 v. Borden*, supra, 373 U.S. at 697, 83 S. Ct. at 1427.

---

union. In *Perko*, the union member alleged a conspiracy to deprive him of his job as foreman. He sought no redress for injury to his rights as a union member.

[3] The thrust of the entire complaint is summed up in the prayer for relief in which plaintiff-appellants seek "an injunction . . . ordering [defendant-appellees] to restore plaintiffs to all of their rights and privileges in defendant union and reinstate plaintiffs as members in good standing thereof, and further ordering them to pay plaintiffs such damages as plaintiffs have sustained as a result of their illegal and unlawful conduct as hereinabove set forth, including damages for grievous physical and mental pain and suffering, humiliation, worry and degradation, and such exemplary damages as may be meet and proper, together with such other damages as the Court may deem meet and just; and for such other and further relief as to the Court may seem meet and proper in the premises."

In view of the Supreme Court's decision in *Gonzales,* the subsequent interpretation of that case, and the substantial similarity between the complaint in that case and the one before us in all material aspects, we cannot hold that appellants' action is grounded upon injury to their employment. Even assuming, as appellees argue, that the *Gonzales* case has been limited by later decisions, that case has not been overruled and applies squarely to the facts at bar.

We turn now to the second allegation of lack of jurisdiction, failure to exhaust internal union remedies.

In *Falsetti v. Local Union No. 2026, United Mine Workers of America,* 400 Pa. 145, 161 A. 2d 882 (1960), we held that our courts shall not take jurisdiction to review the expulsion of a union member unless he first exhausts all available internal union remedies. To this rule, in order to protect the rights of the union member, we noted specific exceptions. ". . . [T]here is no need for a member to exhaust his internal remedies where the association officials have, by their own actions, precluded the member from having a fair or effective trial or appeal. See Heasley v. Operative P. & C. F. I. Assn., 324 Pa. 257, 188 Atl. 206 (1936); Weiss v. The Musical Protective Union, 189 Pa. 446, 42 Atl. 118 (1899). This includes those situations in which a member is not given due notice, right of hearing or review (See, e.g., Labor Management Reporting and Disclosure Act of 1959, Sec. 101 (a)(5)), and those where the association's officials are obviously biased or have prejudged the member's case before hearing it. See Blenko v. Schmeltz, 362 Pa. 365, 67 A. 2d 99 (1949)." Id. at 159-60, 161 A. 2d at 889. (Footnotes omitted.)

We agree with appellees that the *Falsetti* case holds also that a mere allegation of exhaustion, without more, is insufficient to support jurisdiction. How-

ever, our reading of the complaint convinces us that appellants have gone beyond merely alleging exhaustion of remedies and have averred sufficient facts to sustain jurisdiction. The truth of the complaint, of course, is admitted for the purpose of preliminary objections. See *Schuster v. Gilberton Coal Co.*, 412 Pa. 353, 194 A. 2d 346 (1963).

The complaint alleged that after an investigation of the union local's affairs, the international union appointed a trustee (one of appellees) to take charge of the local. Acting on behalf of the international, the trustee deprived appellants of membership without preferring charges and without a hearing of any kind. Appellants made known to the trustee their desire to continue as members in good standing, but the trustee, still acting for the international, refused to recognize them as such. Appellants appeared before the Executive Body of the International Convention, but that body refused permission to present an appeal either before it or before the Convention.

These allegations clearly fall within the exception to the exhaustion of remedies doctrine as quoted from *Falsetti*.

Appellees assert that the union constitution provides ample remedies which could have been pursued. They cite Article VII, entitled "Misconduct and Trial Procedure for Locals." That article provides, inter alia, "Any member who violates his obligations, and the rules or regulations adopted by the Organization or Local . . . shall be summoned before the membership of his local for trial. . . ." (§1). "All charges preferred against a brother member shall be presented to his local in writing, signed by the complainant. . . ." (§2(a)). "Upon charges against a brother member being properly preferred, a trial committee . . . shall be elected. . . ." (§4). "Any member convicted in the regular manner of any offense may appeal to: (1)

Executive Committee of that Local where tried, and (2) International Convention." (§8).

It is patently obvious that none of these procedures was followed by the union, which, under its constitution, must institute the proceedings against the member in the first instance. Appellees urge, in effect, that an appeal be taken in a situation where there are no charges, no summons to appear, and no trial from which to appeal. To the contrary of appellees' argument, there are no internal remedies whatsoever to cover the situation created by the union's failure to follow its own constitutionally established procedures.

In view of the foregoing, it is our conclusion that the jurisdiction of the court of common pleas was not preempted by the National Labor Relations Board. Furthermore, on the record before us, access to our courts may not be denied on the ground of failure to exhaust union remedies.

Reversed and remanded for further proceedings.

Mr. Justice MUSMANNO dissents.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority maintains that "[t]he thrust of the entire complaint is summed up in the prayer for relief. . ." (footnote 3 of majority opinion). My reading of the prayer for relief, together with paragraph 14 of the complaint does not permit this conclusion. Paragraph 14 states as follows: "14. From and after January 10, 1956, plaintiffs have been unable to secure employment in their former occupations, solely by reason of the illegal, wrongful and improper expulsion and punishment of plaintiffs by the defendants, and plaintiffs are informed and believe that they will in all probability be unable to secure regular employment in their trade or occupation in the maritime field until the final decision of this Court on this complaint restores them to their former rights, privi-

leges and status in said union. During the period from January 10, 1956, to date, plaintiffs have suffered loss of earnings in various sums and amounts and will continue to suffer such further losses until their rights and privileges are once more recognized."

To me it is clear that since the prayer for relief seeks "such other damages as the Court may deem meet and just," and since paragraph 14 alleges ". . . plaintiffs have suffered loss of earnings in various sums and amounts and will continue to suffer such further losses", this is not an action solely to rectify violence done to the union-member relationship and does not focus entirely on internal union matters. This action deals directly with matters of employment and the principal relief sought is in the area which has been preempted as being exclusively within the competence of the National Labor Relations Board.

I thought that the doctrine of federal preemption was finally completed with the decision of the United States Supreme Court in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). Therein it was said that state as well as federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted when an activity is arguably subject to Section 7 or 8 of the Taft-Hartley Act.

In *Local 100, United Assn. of Journeymen and Apprentices v. Borden*, 10 L. ed. 2d 638 (1963), the United States Supreme Court indicated the slight bearing that the complained of activity must have on employment status to make it arguably an unfair labor practice: ". . . if it is assumed that the refusal *and the resulting inability to obtain employment* were in some way based on respondent's actual or believed failure to comply with internal union rules, it is certainly 'arguable' that the union's conduct violated" the Labor Man-

agement Relations Act and that jurisdiction is in the NLRB. 10 L. ed. 2d at 642.

The United States Supreme Court in a further effort to avert state interference with national labor policy indicated that in the first instance questionable situations should be referred to the NLRB and that if after an inquiry into the facts the board found that the union conduct in question was not an unfair labor practice, it might return jurisdiction to the state courts. *Local 100, United Association of Journeymen and Apprentices v. Borden,* supra, 10 L. ed. 2d at 642.

Thus, in a case such as this, which is arguably within the jurisdiction of the NLRB, we should not assert our jurisdiction merely because the "Wherefore" clause of the complaint (footnote 3 of majority opinion) does not specifically spell out that this is an action for loss of earnings resulting from some union activity. Especially is this true where the complaint is clear that damages for loss of wages together with loss of employment are alleged. No fair reading of the complaint can conclude that the activity which the majority seeks to regulate is not arguably subject to Section 7 or 8 of the Act.

Only recently we stated in *Young v. United Steelworkers of America,* 413 Pa. 90, 196 A. 2d 313 (1964) in a per curiam opinion: "In view of our holding in the recent case of Wax v. Int. Mailers Union, 400 Pa. 173, [161 A. 2d 603], it is clear that the court properly refused to take jurisdiction in the instant case. We there stated that 'our jurisdiction can only be sustained where the complaint is grounded solely on injury to the plaintiff's member-union relationship, and which complaint does not seek damages for "back pay" as a result of interference by the union with employment rights, which remedy the N.L.R.B. is specifically empowered by Section 10(c) to grant in unfair labor practices cases.' "

In *Wax v. International Mailers Union,* supra, we completely disapproved *International Association of Machinists v. Gonzales,* 356 U.S. 617 (1958), since it was effectively overruled by the remarks of Justice HARLAN and Justice FRANKFURTER in the *Garmon* decision.

I thought that our Court's unanimous opinion in *Young v. United Steelworkers,* supra, quoting from *Wax,* had permanently laid to rest the contention of the majority. I see no reason why the discarded rationale of *Gonzales,* which has been so restricted by the United States Supreme Court to its facts that it is completely without any authority, should be resurrected by our Court, unless it be to get a labor union before a judge and jury rather than before the National Labor Relations Board which could order job reinstatement and award back pay.

On January 6, 1964, in *N. L. Liner v. Jafco, Inc.,* 11 L. ed. 2d 347 (1964), the United States Supreme Court again unanimously reaffirmed the supremacy of the NLRB in labor disputes and defined the term "labor dispute" to include: ". . . any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 11 L. ed. 2d at 353 n.6.

It is apparent that paragraph 14 of the complaint comes within that definition and hence state court action is proscribed.

I dissent.