Spica, Appellant, *v.* International Ladies
Garment Workers' Union.

Argued November 18, 1965. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Peter P. Liebert, 3rd,* for appellant.

*Michael F. Walsh,* with him *Bernard N. Katz,* and *Meranze, Katz, Spear & Bielitsky,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 22, 1966:

Josephine Spica, member of the International Ladies Garment Workers' Union, and business agent of Local 15, Philadelphia Dress Joint Board, filed in the court of common pleas, Philadelphia, an amended complaint in equity against the ILGWU, Philadelphia Dress Joint Board and William Ross, business manager of the board, averring that Ross interfered with her conduct as a business agent, that on July 27, 1954, she was brought before the board of the Philadelphia Dress Joint Board for a hearing, that the board ordered her discharged from her position and that this decision was affirmed on October 8, 1954, by the executive board, ILGWU. She alleged that the hearing and the affirmance of decision were in violation of the union's constitution and by-laws, and a deprivation of her rights as an elected officer and member of the union. She averred further that as a result of being improperly removed from office and from membership in the union, she was deprived and will continue to be deprived of her salary and expense account as business agent; that her reputation and good name as a union official has been damaged with injury to her future opportunities to procure like positions; she has suffered humiliation and embarrassment in her relation with members of the union and the community in general; has been deprived of union pension benefits, has

been deprived of her right to work in other positions in the industry, subject to agreement between the union and its employers' association, and that these deprivations have caused and will cause her to lose large sums of money as well as $21,000 which she claims, inter alia, as loss of earnings to date.

The defendants filed preliminary objections, stating that she had not exhausted her remedies within the union and that the National Labor Relations Board had exclusive jurisdiction of the matter raised in her complaint. The court sustained the objections and dismissed the complaint, stating: "The complaint alleges that she has failed to exhaust her remedies within the union's constitutional processes because they are unreasonable. This assumes the very question at issue, therefore until she has attempted the remedies provided she has no basis for the allegation that the decision will be adverse or that the appellate procedure provided is unreasonable.

"Plaintiff has slept on her rights for seven and one-half years and if her complaint is well founded she has accrued additional loss of income to the prejudice of the defendants. No explanation for the delay of seven years was offered."

The rule that a complaining union member must first seek redress within the procedures afforded by the Union's rules is now part of the very fabric of our labor law. In *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 400 Pa. 145, 163, this Court said: "We are hopefully entering a new era in union self-discipline and responsibility. Rather than adopt judicial rules that would discourage resort to union processes which now must meet detailed elementary standards of fairness, we will attempt in every way to encourage the steady evolution of internal democracy. A strict adherence to the rule of exhaustion will go far toward placing the initial responsibility where it right-

fully belongs—on the association itself. It is only when an issue has become fully 'ripe' for adjudication that our courts will enter the picture."

Nor is it enough to excuse oneself from following union appellate procedure by asserting, without properly pleaded facts (which seem to be absent here) that resort to the union machinery for a redress of grievances would be without avail: ". . . a mere allegation by the pleader of futility or illusoriness will not satisfy the jurisdictional requirement" (400 Pa. 165)

However, it is unnecessary to dwell at length on this weakness in the plaintiff's case because her amended complaint clearly reveals that she has chosen the wrong jurisdiction in which to pursue her remedies. She asserts that, as a direct result of her expulsion as business agent and as member of the ILGWU, she "has been deprived of her right to work in those places of employment in the industry, subject to the agreements between the I.L.G.W.U. and its employers' association, and such deprivation of her right to work in said industry is of the value of $25,000." It is thus obvious that the heart of her complaint is the injury done to her employment relationship. The case accordingly falls within the scope of our decision in *Wax v. Int. Mailers Union,* 400 Pa. 173, at 181, where we stated: "In the matter now before us, the appellee seeks reinstatement only because, as he alleges, the direct result of the expulsion has been to prevent him from continuing work as a mailer. He makes no claim for damages based on injury to his *rights as a member* of the appellant unions, which in a proper case, as we stated in Falsetti, our courts will protect. Therefore, the crux of the appellee's case is not injury to the union-member relationship, as it was in Gonzales, but rather injury to appellee's *employment* relationship by reason of the appellant's arbitrary and unreasonable action in expelling him. Since appellee has not pro-

vided any explanation of how or why the expulsion from appellant unions has prevented him from obtaining work as a mailer, we can only infer that in pursuance of agreements or arrangements between employers and the appellants, only members of the appellant unions could obtain work from the employers, and further, that as a consequence thereof, that appellants from August, 1956, on, caused the employers to refuse employment to the appellee because he had lost his membership in appellant unions. The theory of appellee's cause of action, therefore, if substantiated by the evidence, makes it at least arguable, if not more, that the type of union activity involved was in violation of Section 8 (b) (2) of the Taft-Hartley Act and thus subject to the N.L.R.B.'s exclusive jurisdiction." (Emphasis that of the court.)

Section 8(b)(2), 29 U.S.C. §158(b)(2), of the Taft-Hartley Act provides that it shall be an unfair labor practice for a labor organization or its agents: "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

Section 8(a)(3) makes it an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . ."

Section 10(a) of the Act gives the National Labor Relations Board jurisdiction and power to prevent such unfair labor practices in industries affecting in-

terstate commerce, and §10(c) empowers the board to grant certain relief in those cases.

Where the case is "arguably" subject to the jurisdiction of the National Labor Relations Board's jurisdiction, that jurisdiction is exclusive: *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775; *Local 207, Bridge Workers v. Perko,* 373 U.S. 701.

We hold that the amended complaint makes out a case "arguably" subject to the jurisdiction of the National Labor Relations Board and it follows that the state courts are without jurisdiction in the controversy.

Decree affirmed; each party to pay own costs.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur in the majority's action in sustaining the dismissal of the complaint on the ground that appellant failed to exhaust her internal union remedial processes.

I dissent, however, from the majority's alternative holding that the instant suit is preempted by the National Labor Relations Act.

In my view, the preemption issue in the instant case is governed by *International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S. Ct. 923 (1958). In that case, a union member claimed that he had been expelled from membership in the union in violation of the union's constitution and by-laws. He sued the union in a California state court for restoration of his membership rights and for damages for his illegal expulsion. The United States Supreme Court, in an opinion by Mr. Justice FRANKFURTER, held that the action was not preempted by the National Labor Relations Act. That Court noted that "to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership

would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastic result, on the remote possibility of some entanglement with the Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act." *International Association of Machinists v. Gonzales*, supra at 620, 78 S. Ct. at 925.

The case presently before us presents the same issue of preemption as was considered in *Gonzales*. We are here confronted not with a labor-management dispute, or what is sometimes termed the "employment relationship",[1] but rather with an internal union dispute not covered by the National Labor Relations Act.[2] I can only conclude, therefore, that *Gonzales* controls the preemption issue in the present case.[3] As Mr. Justice FRANKFURTER noted, "a state court decision re-

[1] See *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates, and Pilots of America, Inc.*, 414 Pa. 277, 281-82, 199 A. 2d 432, 434 (1964).

[2] The proviso to §8(b)(1) of the Act states that "this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein. . . ." 61 Stat. 141, 29 U.S.C. §158(b)(1). Moreover, the fact that the complaint seeks monetary damages for loss of wages does not change the result. The United States Supreme Court expressly considered this point in *Gonzales* and there held that the possibility of conflict arising from a state court's award of damages is "too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member." *International Association of Machinists v. Gonzales*, supra at 621, 78 S. Ct. at 925-26.

[3] Subsequent to the decision in *Gonzales*, the United States Supreme Court reaffirmed the preemption doctrine in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773 (1959), but expressly noted that a suit such as the one involved in the *Gonzales* case would not be preempted by the National Labor

434

quiring restoration of membership requires considera-
tion of and judgment upon matters wholly outside the
scope of the National Labor Relations Board's deter-
mination with reference to employer discrimination
after union ouster from membership." *International
Association of Machinists. v. Gonzales,* supra at 622, 78
S. Ct. at 926.; see also *International Organization
Masters, Mates and Pilots of America, Local No. 2 v.*

---

Relations Act because it was too peripheral to the concerns of that
Act. *San Diego Building Trades Council v. Garmon,* supra at 244-45,
79 S. Ct. at 779.

Moreover, the decisions of the United States Supreme Court
in *Local 100, United Association of Journeymen and Apprentices
v. Borden,* 373 U.S. 690, 83 S. Ct. 1423 (1963), and *Ornamental
Iron Workers Union v. Perko,* 373 U.S. 701, 83 S. Ct. 1429 (1963)
are in no way inconsistent with *Gonzales,* and cannot be viewed
as having sub-silentio overruled *Gonzales.*

In *Perko,* the allegation of the union member was that the
union had conspired with the company to discharge him from his
duties. Thus, the Court was confronted with a situation which was
not peripheral to the employment relationship, but rather one which
fell "within the ambit of the unfair labor practices prohibited by
§§8(b)(1)(A) and 8(b)(2) of the Act." *Ornamental Iron Workers
Union v. Perko,* supra at 706-07, 83 S. Ct. at 1432.

In *Borden,* the Court was presented with a unique situation
in that the union member's complaint "focused principally, if not
entirely, on the union's actions with respect to Borden's efforts to
obtain employment." *United Association of Journeymen and Ap-
prentices v. Borden,* supra at 697, 83 S. Ct. at 1427. Because of the
factual involvement of the union in the employment relationship
through its operation of a hiring hall, the Court distinguished that
case from *Gonzales,* stating that *Borden* "does not come within
the *Gonzales* rationale." Ibid.

It is equally significant to note that the United States Su-
preme Court in *Borden* described the *Gonzales* rationale in these
words: "the Gonzales decision, it is evident, turned on the Court's
conclusion that the lawsuit was focused on purely internal union
matters, i.e., on relations between the individual plaintiff and the
union not having to do directly with matters of employment . . ."
Ibid.

*International Organization Masters, Mates and Pilots of America, Inc.,* 414 Pa. 277, 199 A. 2d. 432 (1964); cf. *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S. Ct. 657, 34 L.W. 4136 (February 21, 1966); *Meyer v. Jt. Council 53, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 416 Pa. 401, 206 A. 2d 382 (1965).

For these reasons, I dissent from the majority's alternative holding that the union member's cause of action against his union is preempted by the National Labor Relations Act.