**McClintock v. Building & Construction Trades Local 530**

*Samuel R. DiFrancesco, Sr.,* for plaintiffs.

*Patrick A. Gleason,* for defendants.

McDONALD, P. J., February 27, 1973.—This matter is before the court in equity. The complaint avers plaintiffs were elected as journeymen members of Local Union 530, Journeymen and Apprentices of the Plumbing and Pipefitting Industry of Cambria, Indiana and Somerset Counties, and Vicinity of Pennsylvania (hereinafter referred to as "local"), and then excluded from membership without due cause. It asks an order reinstating them as members in good standing, expunction of the rescinding action, and injunction to restrain interference with their membership rights and employment as journeymen members, and damages for loss of wages. Three of the plaintiffs, Wayne J. Leventy, Anthony J. Balestrieri and Steve Krassnoski, Jr. (herein referred to as "plaintiffs"), appeared at the trial and offered evidence in support of their complaint. Steve McClintock, Roy D. Caugherty and John L. Janezic, Jr., also plaintiffs, failed to appear and offer evidence. Apparently, they have abandoned their action. As to these three, judgment will be entered for defendants.

Defendants contend plaintiffs failed to meet the qualifications as provided by the bylaws of the local, or the constitution of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (herein referred to as "UA"), the international union with which the local is affiliated. Further, they were

not selected in accordance with the apprenticeship program of the local or the UA, which comply with certain Federal standards under Title 28 of the Civil Rights Law of 1964, 28 U. S. C. §1447.

## FINDINGS OF FACT

1. Plaintiffs are individuals residing within the jurisdictional boundaries of the local, i.e., Cambria, Indiana and Somerset Counties and vicinity of Pennsylvania.

2. Defendant local is an unincorporated local union, with offices in the City of Johnstown, Cambria County, and affiliated by contract with the UA.

3. The individual defendants reside within the jurisdictional boundaries of the local, and are members of said union.

4. Defendant DeRosa is business agent of the local.

5. Defendant, James Brant, was, on May 27, 1970, president of the local and secretary of the organizing committee.

6. Defendant, Jack Hockensmith, was, on May 27, 1970, a member of the apprenticeship committee, executive committee and the organizing committee of the local; Jack Summerfield, William Drager and Robert Goss were, on the said date, members of the organizing committee.

7. Plaintiffs had all worked as permit-men under the local's program for varying periods of time from six months to two years.

8. During March and subsequent months of 1970, the local, at the direction of the UA, engaged in an organizing drive of nonunion shops within its jurisdictional area.

9. Plaintiffs' applications for membership in the local were accepted by the local during this organizing drive although they were employed as permit-men in a union shop under auspices of the local. The applica-

tions, defendants' exhibits E, F, and H, indicate the report of the examining board on each was "favorable," and memberships "recommended."

10. On May 5 and May 25, 1970, in conjunction with the organizing drive, examinations were given journeymen and apprentice applicants of the local; of the 27 applicants examined in both categories, only one passed the examination. The examining committee recommended the examinees be required to attend the Joint Apprenticeship School.

11. Plaintiffs' exhibit A, the record of the examination of May 25, 1970, discloses plaintiffs were examined as "Plumber Apprentice," together with other applicants. The only successful examinee was Edward W. Bara, a plumber journeyman.

12. Daniel J. Niggemeyer, an international representative of the UA who had ordered the organizing drive, also authorized and directed plaintiffs be sworn in as members of the local.

13. On May 27, 1970, at a regular meeting of the local, 18 of the applicants who had taken the examinations, including plaintiffs, were sworn in as members of the local; nine are at this date active members of the local. They were all enlisted from nonunion shops.

14. Plaintiffs were sworn in as plumber apprentice members.

15. On May 27, 1970, at the time of taking the oath of membership, plaintiffs Leventry and Balestrieri paid $50 on the initiation fee of $600, and one month's dues of $5.75; plaintiff Krassnoski paid $20 of the initiation fee and one month's dues of $5.75.

16. Plaintiffs were not issued dues books or stamps in accord with the UA constitution, sections 174, 175; their names were not listed on the "cash sheet" and the per capita share of their dues was not transmitted to the UA general offices in Washington, D. C.

17. On and after May 27, 1970, until September 1970, plaintiffs attended regular meetings of the local; during the latter month, they were told not to attend further meetings.

18. Plaintiff Leventry paid weekly work assessments, under article V(a) of the local's bylaws, through December 1970; thereafter, he paid permit-man assessments until his work terminated in late January 1971.

19. Plaintiff Balestrieri paid weekly work assessments under article V(a) until December 15, 1970, and thereafter he paid permit-man assessments until the latter part of January 1971, when his work terminated.

20. Plaintiff Krassnoski paid weekly work assessments in accordance with article V(a) until December 30, 1970, and thereafter he paid permit-man assessments until the middle of February 1971, when his work was terminated.

21. The swearing of plaintiffs as members of the local was not rescinded by action of the membership.

22. The local, for the past 10 years, has followed procedures for selection of apprentices in compliance with provisions of title 29, sec. 30, Code of Federal Regulations.

23. The procedure for the selection of apprentices by the local, which followed certain nondiscrimination guidelines under title 29, included a stated application period; advertisement of methods whereby application may be made; certain age, education and moral character qualifications; testing by the Pennsylvania Bureau of Employment Security; and interview of the successful examinees by the Joint Apprenticeship Committee.

24. At the insistence of the Apprenticeship Committee, and in order to provide an opportunity for

plaintiffs to make application under the aforesaid selection procedures, the apprenticeship training program was opened for applicants during the week of October 19, 1970.

25. Plaintiffs made application for admission to the local as apprentices under the aforesaid program.

26. In January 1971, under the supervision of the Pennsylvania Bureau of Employment Security, an examination was given to applicants for the apprenticeship training program; this examination was given as part of the requirement for membership in the apprenticeship training program for which applications had been made during the week of October 19, 1970.

27. Thirty-nine applicants, including plaintiffs, took the examination. Of the plaintiffs, only Krassnoski passed. However, he failed to comply with the interview requirement, through no fault of his own, and a subsequent interview was not afforded. None of the examinees was accepted because there was insufficient work for the then members of the local.

28. The constitution and bylaws of the UA, and the bylaws of the local do not require a written examination as a prerequisite to membership as an apprentice.

29. In 1970, plaintiff Balestrieri had a gross income of $17,416., as a pipefitter, working under permit of the local, and in 1971, an income of approximately $900. He has applied for employment through the Pennsylvania Employment Services, and at Bethlehem Steel Company. He is now receiving an assistance grant from the Department of Public Welfare.

30. In 1970, Krassnoski had a gross income of $10,943, as a pipefitter, working under permit of the

local, and in 1971, an income of $3,745. He is now unemployed.

31. In 1970, plaintiff Leventry had gross earnings of $8,977, as a pipefitter, working under permit of the local, and in 1971, an income of $1,154.40. He has been unemployed since November 1971.

## DISCUSSION

Prior to May 1970, plaintiffs were employed as permit-men by signatory plumbing contractors under auspices of the local. As such, they received journeyman wages and paid weekly permit assessments to the Local.

At its meeting on March 11, 1970, the local was directed by an International Representative, Daniel J. Niggemeyer, to conduct an organizing drive of nonunion shops within its jurisdiction. Incident to the drive, nonunion shop owners and employes were encouraged to join the local. With the consent and approval of the organizing committee appointed April 8, 1970, plaintiffs made application for membership in the local. The applications were processed, and aptitude examinations given to plaintiffs and 24 other applicants. Of these, only one, a shop owner with 30 years of experience in the trade, passed. Notwithstanding, all applications were marked approved by the examining board and admission recommended for all examinees conditioned upon attendance at the Joint Apprenticeship School.

On May 27, 1970, with the consent of the international representative, plaintiffs and 15 others were sworn in as members, 15 as apprentices and three as journeymen. Of those sworn on that date, nine are still members of the local. Plaintiffs were sworn as apprentice members. Each paid, as required by article V of the local's bylaws, a partial payment on

his initiation fee, and one month's dues. Under sections 173 and 174 of the UA bylaws at that time, their names were to be recorded on the roster of the local and a dues book provided. Section 175 provides the stamp issued upon payment of dues is to be "properly cancelled by the financial secretary and pasted in the dues book." While the record kept by the financial secretary shows plaintiffs were sworn in as apprentices on May 27th, testimony discloses the dues books have not been issued and their names were not entered on the roster of membership by the recording secretary.

For a period of about four months, plaintiffs attended meetings of the local. In September 1970, they were told to discontinue their attendance. Notwithstanding, until late December and early January, the local collected from each, weekly work assessments which are, under article V(a) of the bylaws, collected from all members who are employed. Thereafter, each contributed permit-man assessments weekly until all work had terminated in January and February 1971.

The records of the local failed to disclose any action taken to rescind plaintiffs' memberships. However, the chairman of the joint apprenticeship committee of the local and the Mechanical Contractor's Association, expressed opposition to plaintiffs' membership, contending they had not been accepted in accordance with procedures set forth in finding of fact 23. Subsequently, the apprenticeship selection program was opened and plaintiffs, who at this time were excluded from meetings and union activities, but nonetheless paying membership assessments, were prevailed upon to apply. They took another examination with 36 other applicants. Of these, the highest scoring 20 were selected for

interviews. Among these was plaintiff Krassnoski who, due to a transportation problem, failed to appear for his interview. However, of the 39 applicants, none was accepted, regardless of examination score or interview, since, as explained by one of the witnesses, the area work opportunities had decreased and there was insufficient work for the union members.

The pleadings raise this question. Are plaintiffs members of the local and entitled to exercise the rights and privileges of membership?

At the outset, it seems rather unusual that the local, acting under the direction of its international, the UA, can suspend its rules relating to selection of members during a nonunion organizing drive. It is obvious the acceptance of members from nonunion shops, because they are within that class, is discriminatory of equal opportunity for all, for the end result is the same as noncompliance with selection procedures when an organizing drive is not being conducted. Defendants adamantly contend this suspension of rules is authorized, although we find no section of the constitution or bylaws which suggests this. Thus, we conclude, even though under this procedure the local is not complying with its own apprenticeship selection program, and is in apparent violation of Federal nondiscrimination standards, it may suspend its own rules.

Why then, if during this drive, when the rules are suspended and the danger of discrimination exists, can there be a discrimination against other applicants who are not employed in nonunion shops, particularly when the applications of the latter are accepted, approved and membership recommended, as was done in the cases of plaintiffs?

A union which prescribes the method of selection

of members and their qualifications may also suspend or alter these. It appears from the testimony, failure to comply with Federal and State standards of apprenticeship selection can result in sanctions against the apprentices, or the program. However, in this action we must decide whether it is inequitable and unjust to permit the local to set aside plaintiffs' memberships for its failure to follow its own selection procedures, particularly when plaintiffs in good faith applied for, were approved and took the oath of membership.

Plaintiffs argue there was a waiver or suspension of the selection procedure and, having waived or suspended it, and having accepted plaintiffs as members, the local is now estopped to deny them the rights and privileges of membership.

As indicated above, the procedure for accepting members was suspended during the organizational drive, which commenced in March 1970. Presumably, this was done by vote of the membership at the meeting on March 11, 1970, which was attended by international representative, Daniel J. Niggemeyer, of the UA. At that meeting, Mr. Niggemeyer requested the drive. On April 11, 1970, the minutes show the appointment of an organizing committee. Why plaintiffs were permitted to make application during this drive is not apparent in the testimony, unless we accept the statement of the then president of the local, who administered the obligation of membership, that he had made "a mistake." However, we must assume the officers and members of the local were knowledgeable of the apprenticeship selection program, that they were aware plaintiffs were working as permit-men on a union job and that the administration of the obligation of membership and collection of dues was a prerequisite to membership. To now dismiss their

action by a hindsight explanation of "mistake" should not, and in our view does not, nullify the waiver or suspension of selection procedures which were voluntarily and knowingly made at the time.

Defendants' argument that the procedure relating to apprentice selection was not waived, is unconvincing. If plaintiffs had made a misrepresentation which led the local to accept the applications during the organizing drive rather than under the usual procedure, the argument would have some substance. However, the application cards are provided by the local, and the examination given under its supervision. The swearing-in was done at a meeting. At any point, the execution of the application, the taking of the examination or the swearing-in, the local could have refused to accept plaintiffs. Its failure to do so is certainly an acquiescence in the procedure.

Defendants now argue in their brief the case must be dismissed for failure of plaintiffs to allege or exhaust internal union remedies. We point out this issue of jurisdiction was not raised by preliminary objection or a motion for compulsory nonsuit. At no time was it mentioned until the filing of plaintiffs' brief. We recognize jurisdiction over the subject matter may be raised at any time, (Yentzer v. Taylor Wine Co., 186 A. 2d 396), even on the appellate level: Rybak Estate, 424 Pa. 470. However, this issue should have been adjudicated preliminarily, (if a pure question of law), or, at least, during the trial, when an amended complaint could have been filed and evidence offered necessary to determine jurisdiction. In such case, since it was not raised by preliminary objection or at trial, we shall refuse to dismiss plaintiffs' pleadings as insufficient, since they could have been amended, and decide the issue on the record as developed.

The thrust of defendants' argument is that plaintiffs have failed to "secure redress of their grievances" under sections 222, 231, 232 and 235 of the UA constitution and bylaws.

Section 222 provides for the disciplining of officers and members of a local who unjustly discriminate against others. Complaint under this section would, of course, bring about the trial of an officer or a member who had discriminated against others, but would not raise directly the issue of plaintiffs' membership.

Sections 223 and 224 provide the procedure for making charges against a member who has breached his obligation to the UA or the local. Its evident purpose is to provide internal due process. These sections require some procedural action on the part of the local. No such action was taken.

Section 231 applies to a protest against "any provision of the constitution," and provides the right of appeal from a suspension or expulsion made by "the General President or his representative, or any organizer, to the General Executive Board . . . ." This, too, is inapplicable, since no section of the constitution is protested and no decision has been made by any of the enumerated officers.

Section 232 provides for an appeal to the General Executive Board by the local to sanction assessments, suspensions or expulsion of members under section 228(a). This latter section requires approval of the General Executive Board for such action of the local. Thus, section 232 requires action by the local. Obviously, since there has been no expulsion in accordance with the procedures of sections 223, 224 and 228(a), the local would not have asked for approval.

Section 235 provides that no officer, representative

or member of the UA or its local unions ". . . shall resort to court proceedings of any description, in any manner pertaining to this organization or its Local Unions, or his membership, or his office, until all remedies provided for within the United Association's constitution have been fully exhausted." Since defendants have now raised the issue of jurisdiction, this section which relates to the exhaustion of internal remedies would preclude jurisdiction of the subject matter unless no remedy was available, or plaintiffs are within an exception.

There is no doubt a complaining union member must exhaust internal remedies provided by the constitution and bylaws of a union before he may seek and obtain redress in a common pleas court: Mamula v. United Steel Workers of America, 414 Pa. 294; Falsetti v. Local Union No. 2026, U.M.W., 400 Pa. 145; Wax v. International Mailers Union, 400 Pa 173; Strano v. Local Union No. 690, 398 Pa. 97. Each of these cases was decided on preliminary objections to jurisdiction, either for failure to allege exhaustion of remedies or to aver facts which indicated this, or that said remedies were burdensome, futile or unreasonable.

A member need not exhaust internal remedies when (1) the remedy is illusory; (2) when union officials have precluded the member from a fair or effective trial; (3) when to require the exhaustion of remedies would be burdensome; (4) where it would subject a member to injury, i.e., during the interim of appeal he is barred from working in a union shop: Falsetti v. Local Union No. 2026, U.M.W., supra.

The situation here is a rather unusual one. In the cases cited and reviewed by this court, the facts of all indicate a valid membership, an expulsion or some disciplinary action after hearing, and a failure to

exhaust internal remedies before filing action in the common pleas court. Here, plaintiffs were sworn in, paid dues and assessments and then were told to discontinue attendance at meetings. They continued to pay work assessments but not dues. The dues book was not issued, the dues were not sent to the international and their names were not placed on the "cash sheet" (presumably the roster) which apparently controls the work assignments. The local, after administering the obligation of membership and collecting part of the initiation fee and dues, then ignored its action. It took no steps to rescind the acceptance of plaintiffs into membership, no charges were filed, no hearing held; it was as if the local had decided, without official action, or by any compliance with the bylaws relating to expulsion of members, to nullify its acts by inaction.

Since plaintiffs were not expelled by official action consistent with due process, they need not pursue their internal remedy: Heasley et al. v. Operative Plasterers & Cement Finishers International Union, Local No. 31, et al., 324 Pa. 257; Weiss v. The Musical Mutual Protective Union, 189 Pa. 446. Thus, they are clearly within the second exception set forth above. We might add, the testimony of various union members and officers indicates any internal remedy is illusory, even should due process be observed, since the very officers who would conduct the hearing were positive in their testimony plaintiffs have not been members ab initio. As stated in Falsetti v. Local Union No. 2026, U.M.W., supra, pages 159, 160:

"[T]here is no need for a member to exhaust his internal remedies where the association officials have, by their own actions, precluded a member from having a fair or effective trial or appeal. See Heasley v. Operative P. & C. F. I. Assn., 324 Pa. 257, 188 Atl. 206

(1936); Weiss v. The Musical Protective Union, 189 Pa. 446, 42 Atl. 118 (1899). This includes those situations in which a member is not given due notice, right of hearing or review (See, e.g., Labor Management Reporting & Disclosure Act of 1959, sec. 101(a)(5), and those where the association's officials are obviously biased or have prejudged the member's case before hearing it. See Blenko v. Schmeltz, 362 Pa. 365, 67 A. 2d 99 (1949)."

Thus, here we are not confronted with a clear-cut situation where plaintiffs have been expelled and due process procedure afforded, but rather one in which the local and other defendants have refused to acknowledge their membership. To require an exhaustion of remedies in the posture of this case would be an exercise in futility. We conclude, therefore, the court does not lack jurisdiction for this reason.

Defendants also contend the main thrust of plaintiffs' case is injury to their employment relationship rather than the union-member relationship; hence, this court lacks jurisdiction since Congress in such cases has preempted State court jurisdiction under provisions of the Taft-Hartley Act, 61 Stat. 136, 29 U. S. C. §141, et seq. This argument has substance. There is no doubt our courts have consistently ruled the NLRB has jurisdiction of disputes which are arguably subject to sections 7 or 8 of the act: Young v. United Steelworkers of America, 420 Pa. 132; Spica v. ILGWU, 420 Pa. 427; Wax v. International Mailers Union, supra; International Organization Masters, Mates and Pilots of America, Local No. 2, v. International Organization Masters, Mates and Pilots of America, Inc., 414 Pa. 277.

The pleadings here focus principally on the restoration or adjudication of plaintiffs' membership in the local. This is purely an internal union matter not

having to do directly with employment. As stated in Local 100, United Association of Journeymen & Apprentices v. Borden, 373 U.S. 690, 83 S. Ct. 1423 (1963), in commenting on International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S. Ct. 923 (1958):

"It was recognized in that case that restoration of union membership was a remedy that the Board could not afford and indeed that the internal affairs of unions were not in themselves a matter within the Board's competence": page 696.

This rationale is derived from the proviso in section 8(b)(1)(A) of the Labor-Management Relations Act, 29 U. S. C. §158, supra, which follows:

"This paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein."

While damages are asked by plaintiffs, this alone does not change the result. In Gonzales, where plaintiff claimed an illegal expulsion, damages for loss of wages, as well as physical and mental suffering, were awarded. The court stated, at page 620:

"But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law, and indeed the assertion of any such power has been expressly denied."

In the same case, the court, in passing on the argument of defendant that the State court lacked power to award damages for loss of wages, stated, at page 621:

"The possibility of conflict from the court's award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict is too contingent, too remotely related to the public interest expressed

in the Taft-Hartley Act, to justify depriving the state courts of jurisdiction to vindicate the personal rights of an ousted union member."

While some doubt has been expressed on the vitality of Gonzales (see Wax v. International Mailers Union, supra), because of the decision in San Diego Building Trades Council v. Garmon, 359 U. S. 236, 79 S. Ct. 773, it was expressly noted in Garmon, pages 244, 245, that a suit such as Gonzales decided would not be pre-empted by the NLRB. In Borden, which is post Garmon, the principle in Gonzales was recognized by this language at page 697:

"The Gonzales decision, it is evident, turned on the Court's conclusion that the lawsuit was focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of employment, and that the principal relief sought was restoration of union membership rights. In this posture, collateral relief in the form of consequential damages for loss of employment was not to be denied."

Thus, we conclude even though damages are asked, and there is an averment that the action of the local and its officers has interfered with the employment of plaintiffs, the pleadings and evidence are focused principally upon the union-member relationship and, therefore, the jurisdiction of this court is not pre-empted by the NLRB.

We are satisfied plaintiffs have failed to carry their burden of proof to support a claim for loss of wages. Each has offered testimony supported by exhibits, to show his earnings for 1970, which included part of the year during which he had been accepted for membership in the local. Each also offered testimony of his earnings to the date of trial. See findings of fact nos. 29-31. We are asked to award damages based on

the difference between the earnings in 1970 and those from January 1971 to the date of trial. There is no doubt one wrongfully expelled from a union is entitled to damages for his loss of wages: Williams v. Masters, Mates & Pilots of America, Local No. 2, 384 Pa. 413; Gordon v. Tomei, et al., 144 Pa. Superior Ct. 449. The measure of damages is the difference between the wages he would have earned as a union member and those he actually earned between the time of expulsion and the time of trial: 48 Am. Jur. 2d Labor, §347, 259, 260. However, plaintiffs have failed to show the prevailing wage scale to which they were entitled as apprentices and the availability of employment during the period after January 1971. To merely award the difference between wages earned in 1970, five months of which they were not union members, and those since, would overlook explanatory factors such as the wage scale under which they were paid for that year (and this was presumably that of a journeyman), overtime, the availability of work and other pertinent factors upon which a formula could be adopted. We cannot on the state of this record make an award which would be fair and just both to plaintiffs and defendants. This request for relief, therefore, must be denied.

We are satisfied plaintiffs are entitled to membership in the local as apprentices, and that they have been unlawfully excluded from and deprived of the rights and privileges of membership. Further, that the evidence has failed to sustain their burden of proof to show damages. Accordingly, we make the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the action.

2. The evidence is sufficient to prove plaintiffs Wayne J. Leventry, Anthony J. Balestrieri and Steve

Krassnoski, Jr., have been qualified and obligated as apprentice members of the local.

3. The aforesaid plaintiffs are entitled to all the rights and privileges of apprentice membership in the local.

4. The evidence is insufficient to sustain plaintiffs' claim for damages.

5. The aforesaid plaintiffs are entitled to judgment against defendants.

6. Plaintiffs Steve McClintock, Roy D. Caugherty and John L. Janezic, Jr., have failed to sustain their burden of proof, and judgment for defendants and against these plaintiffs will be granted.

7. The costs of the proceedings shall be paid by defendants.

## DECREE NISI

Now, February 27, 1973, after hearing and upon consideration of the record and briefs, it is hereby ordered, adjudged and decreed, as follows:

1. Judgment be and hereby is entered for plaintiffs, Wayne J. Leventry, Anthony J. Balestrieri and Steve Krassnoski, Jr., and against defendants.

2. Judgment be and hereby is entered for defendants and against plaintiffs, Steve McClintock, Roy D. Caugherty and John L. Janezic, Jr.

3. Defendants are ordered and directed to: issue a dues book to each of the plaintiffs, Wayne J. Leventry, Anthony J. Balestrieri and Steve Krassnoski, Jr.; inscribe their names on the membership roster of the local; transmit to the United Association General Offices that portion of dues required by the rules and regulations of said United Association; and do any and all things necessary to perfect and validate the apprentice membership of said plaintiffs in the Local.

4. Defendants are enjoined and restrained from interfering with or denying the aforesaid plaintiffs their membership rights and privileges consistent with the provisions of the Local bylaws and the United Association constitution and bylaws relating to apprentices.

5. Defendants shall pay the costs of this proceeding.

6. This decree shall become final within 20 days after notice has been sent to defendants by the prothonotary, unless within said period exceptions shall be filed.